**STATE of Texas, Appellant,**

v.

**John S. BEESON, Trustee, as Successor–in–Interest to Richard C. Bumstead and Sylvia M. Bumstead, John Beeson, and Paul Sirota, Appellees.**

**No. 11–05–00064–CV.**

Court of Appeals of Texas, Eastland.

July 19, 2007.

Walter Brocato, Asst. Atty. General's Office, Austin, for appellant.

Charles B. McFarland, Vinson & Elkins, L.L.P., Houston, for appellee.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

This appeal arises from a lawsuit filed by appellees (landowners) against the State of Texas to establish an easement across an abandoned railroad right-of-way that adjoins their property. The landowners contend that they possess an easement by necessity or, alternatively, a prescriptive easement to cross the railroad right-of-way in order to access a public road that runs along the opposite side of the railroad right-of-way. After considering the parties' competing motions for summary judgment, the trial court determined that the landowners established both of their easement claims as a matter of law.

We reversed the judgment of the trial court and rendered judgment in favor of the State in our initial opinion and judgment issued on February 8, 2007. The landowners subsequently filed a motion for rehearing on March 28, 2007, challenging our rejection of their prescriptive easement claim. The State filed a response to the landowners' motion for rehearing on May 3, 2007. For the first time in this appeal, the State asserted in its response to the motion for rehearing that the landowners' claims are barred by sovereign immunity.

Ordinarily, we would deem a new argument raised after the issuance of our opinion and judgment to be waived. This general rule is inapplicable, however, because the State's sovereign immunity con-

tention involves subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004) (sovereign immunity from suit defeats a court's subject matter jurisdiction). An issue of subject matter jurisdiction can be raised at any time, "[e]ven after all proceedings have long ago come to an end." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser,* 140 S.W.3d 351, 358 (Tex.2004). Accordingly, we are required to consider the State's belated assertion that the landowners' claims are barred by sovereign immunity.

■ A plea questioning the trial court's subject matter jurisdiction raises a question of law that we review de novo. *See Miranda,* 133 S.W.3d at 226. We focus first on the plaintiff's petition to determine whether the facts pleaded affirmatively demonstrate that subject matter jurisdiction exists. *Id.* at 226. If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead. *Id.* at 226–27. A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the pleadings affirmatively demonstrate an incurable jurisdictional defect, then the plea to the jurisdiction must be granted. *Id.* at 227–28. As set forth in greater detail below, we conclude that the sovereign immunity claim is valid because the landowners' suit—filed solely against the State without legislative consent—constitutes an incurable jurisdictional defect.

### Background Facts

The landowners own two small, neighboring tracts of real property that lie immediately north of the railroad right-of-way. A public highway known as "Old Katy Road" runs along the corresponding southern boundary of the railroad right-of-way. Accordingly, the State of Texas owns the property located on the other side of the railroad right-of-way.[1]

The parties' respective tracts have a common source of title: a 655–acre tract acquired by Max and Eliza Roy prior to 1893. In a judgment entered on January 18, 1893,[2] a trial court condemned a railroad right-of-way across the original Roy tract in favor of the Missouri Kansas & Texas Railway Company of Texas. The area condemned consisted of a 100–feet wide right-of-way running east/west across the northern portion of the Roys' large tract. The railroad easement bisected the Roy tract into two tracts: a relatively narrow strip of land lying north of the railroad right-of-way and a large tract of land lying south of the right-of-way. A very narrow strip of the original Roy tract located along the northern line of the railroad right-of-way constitutes the southernmost portion of the landowners' two tracts. With respect to the land lying immediately south of the right-of-way, the Roys conveyed a 7.8–acre strip of land running parallel and adjacent to the railroad right-of-way to Harris County on March 30, 1896. This property has been utilized as Old Katy Road for many years.

From 1893 until the 1990s, the right-of-way was continuously used for railroad

---

1. The parties acknowledge that the State owns Old Katy Road by virtue of its status as a public highway.

2. The condemnation judgment provided in pertinent part as follows: "It is further ordered adjudged and decreed that the land and premises described in the plaintiff's petition

herein be and the same is hereby condemned and adjudged to the Missouri Kansas and Texas Railway Company of Texas for its use and benefit as a right-of-way for its railway, and such right thereto is hereby vested in said Company."

purposes. In 1992, the State purchased the railroad right-of-way from the successor-in-interest of the original railroad company.[3] Pursuant to the terms of the purchase agreement between the railroad company and the State, the railroad company abandoned its use of the railroad right-of-way in 1998. This appeal concerns the use of the right-of-way by the adjoining property owners after its abandonment by the railroad company.

The property descriptions contained in the conveying instruments for the tracts located north and south of the railroad right-of-way do not include the property located within the right-of-way. The parties executed a "Rule 11 Agreement" wherein they stipulated that, upon the railroad company's abandonment of the right-of-way, the landowners own the northern half of the right-of-way and the State owns the southern half of the right-of-way. Since the parties acknowledge the landowners' ownership of the northern half of the right-of-way, the issues in this appeal focus on the landowners' right to cross the southern half of the right-of-way.

The landowners' property consists of two tracts that are 7.0065 acres and 5.7923 acres in size. Their two tracts are separated by a private road know as "Walne Street." Walne Street is a paved road that runs across the right-of-way and intersects with Old Katy Road.[4] The landowners used Walne Street to access Old Katy Road prior to the railroad's abandonment of the right-of-way. They contend

that they possess an easement to continue using Walne Street to access Old Katy Road. The landowners base their claim of an easement by necessity on the contention that the Roys reserved the right to cross the railroad right-of-way in order to access both portions of their property lying north and south of the right-of-way. The landowners base their prescriptive easement claim on the contention that Walne Street has been used by them to access Old Katy Road at least since 1975. The trial court decreed in its final judgment that the landowners are the owners of an easement for the purpose of providing them access to the public road system across the portion of Walne Street which lies on the southern half of the railroad right-of-way.

### Sovereign Immunity

■ The State argues in its response to the landowners' motion for rehearing that it has sovereign immunity from the landowners' trespass to try title action. The State cites *State v. Lain*, 162 Tex. 549, 349 S.W.2d 579, 582 (1961), in support of this proposition. The supreme court held in *Lain* that "[w]hen in this state the sovereign is made a party defendant to a suit for land, without legislative consent, its plea to the jurisdiction of the court based on sovereign immunity should be sustained." The court further held that, if state officials are named as defendants in either their official or individual capacities, they are not entitled to rely on sovereign

---

**3.** The portion of the railroad right-of-way lying south of the landowners' tracts of property was included in a purchase by the State of several miles of railroad right-of-way.

**4.** There is only one reference to Walne Street in the applicable deed records. The description of Walne Street in this reference indicates that it runs between the landowners' two tracts of property. However, this description does not indicate that Walne Street

extends across the railroad right-of-way to Old Katy Road. The description of Walne Street contained within the deed records is inconsistent with the actual course of the asphalt road which separates the landowners' two tracts. Photographs in the summary judgment record illustrate that the road extends across the railroad right-of-way to Old Katy Road.

immunity to defeat the court's subject matter jurisdiction. *Id. Lain* is potentially applicable to this case because the landowners only named the State as a defendant as opposed to suing individual state officials.

■ The landowners contend that *Lain* only applies to a trespass to try title action and that their easement claims are not properly characterized as a trespass to try title action because they do not concern title to land. Instead, the landowners assert that their easement claims can be asserted in a declaratory judgment action. The landowners pleaded their easement claims under the heading of "Trespass to Try Title and Declaratory Judgment" in their fourth amended original petition. The use of this heading is not controlling, however, because we look to the substance of a pleading rather than its caption or format to determine its nature. *See Surgitek, Bristol–Myers Corp. v. Abel,* 997 S.W.2d 598, 601 (Tex.1999). We agree with the landowners' assertion that a declaratory judgment action is an appropriate procedural vehicle for litigating a claim to establish a prescriptive easement. *See Roberson v. City of Austin,* 157 S.W.3d 130, 135–37 (Tex.App.-Austin 2005, pet. denied). However, we disagree with the landowners' contention that sovereign immunity does not bar their declaratory judgment action brought solely against the State.

The landowners cite *Texas Natural Resource Conservation Commission v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002), for the proposition that "no consent is required when suit is filed seeking only a declaration or enforcement of rights" in a declaratory judgment action filed against the State. We disagree. *IT–Davy* does not stand for this proposition.

The plaintiff in *IT–Davy* filed a declaratory judgment action against the Texas Natural Resource Conservation Commission concerning a contract it entered with the Commission. *Id.* at 851–52. The plaintiff sought a declaration of the State's obligations under the contract. The landowners in our case cite a preliminary portion of the court's opinion where it discussed declaratory judgment actions filed against state officials. The court stated that private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority. *Id.* at 855. The landowners rely upon this statement to assert that they are not required to establish the State's consent to this suit because they are only seeking a declaration or enforcement of rights.

■ The landowners' reliance upon *IT–Davy* is misplaced. The statement from *IT–Davy* that the landowners rely upon is limited to certain declaratory judgment actions brought against state officials. This limitation is reflected by the court's comment that these declaratory judgment actions do not implicate sovereign immunity because they do not constitute "suits against the State." [5] *Id.* Simply put, the landowners' easement claims constitute a suit against the State because they named the State as a party defendant to the suit; they did not sue state officials in this case. The court expressly held in *IT–Davy* that "[a] plaintiff who sues the State must establish the State's consent to suit." *Id.* at

**5.** The statement from *IT–Davy* that the landowners rely upon is similar to the holding in *Lain. Lain* turns on the parties named as defendants. 349 S.W.2d at 582–83. If the State is named as a party defendant to a trespass to try title action, the court lacks subject matter jurisdiction to adjudicate the claim against the State because of the State's sovereign immunity. However, state officials named as defendants are not entitled to defeat the court's subject matter jurisdiction by asserting sovereign immunity.

855. Only the legislature can waive the State's sovereign immunity from suit. *Id.* at 857–58. Accordingly, the landowners are incorrect in their assertion that they do not need legislative consent to bring this action against the State.

The landowners do not assert that the State consented to this lawsuit in their responses to the State's sovereign immunity contention. However, the landowners included an allegation in their pleadings that all conditions precedent to filing this suit against the State have been met. Relying upon Tex.R. Civ. P. 54, the landowners additionally argue that they are not required to prove legislative consent · for this suit against the State because the State did not specifically deny the failure of the landowners to obtain legislative consent. We disagree. A court's subject matter jurisdiction is not merely a condition precedent to filing suit. Furthermore, the application of Rule 54 suggested by the landowners conflicts with the principle that subject matter jurisdiction can be raised at any time, even for the first time on appeal.

The landowners' easement claims brought against the State as a party defendant are barred by sovereign immunity. The trial court did not have subject matter jurisdiction. Accordingly, we vacate the trial court's judgment and dismiss the landowners' claims for want of jurisdiction.

### Merits of Appeal

In the event we have erred in determining that sovereign immunity bars the landowners' easement claims, we will address the merits of the appeal.

### Standard of Review

When competing motions for summary judgment are filed and one is granted and the other denied, the reviewing court must review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). The landowners filed a traditional motion for summary judgment while the State sought summary judgment on both traditional and no-evidence grounds. In a summary judgment motion brought under Tex.R. Civ. P. 166a(c), the moving party has the burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Browning v. Prostok,* 165 S.W.3d 336 (Tex. 2005); *Knott,* 128 S.W.3d at 215–16. A summary judgment motion pursuant to Tex.R. Civ. P. 166a(i) is essentially a motion for a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 581 (Tex.2006). Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Tamez,* 206 S.W.3d at 582; *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005). We review the evidence presented by the summary judgment motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tamez,* 206 S.W.3d at 582; *see Goodyear Tire & Rubber Co. v. Mayes,* No. 04–0993, 2007 WL 1713400, —— S.W.3d —— (Tex. Jun.15, 2007); *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex.2006); *Wal–Mart Stores, Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006); *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005).

## Issues on Appeal

The State raises seventeen issues on appeal. Its first, second, third, fourth, fifth, sixth, fifteenth, and sixteenth issues deal solely with the landowners' claim of an easement by necessity. Its seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth issues deal solely with the landowners' prescriptive easement claim. The State's seventeenth issue concerns the trial court's rulings on the State's objections to the landowners' summary judgment evidence.

## Easement by Necessity

■■■■■ The landowners contend that the Roys reserved an easement by implication to cross the railroad right-of-way. They base this contention on the allegation that an easement across the right-of-way was necessary for the Roys to access both portions of their property that were bisected by the right-of-way.[6] A party claiming an easement by necessity exists must demonstrate (1) unity of ownership prior to the separation, (2) the access is a necessity and not a mere convenience, and (3) the necessity must exist at the time of severance of the two estates. *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex.1984).[7] The party claiming an easement by necessity has the burden of proving his entitlement to same. *See Miller v. Elliott*, 94 S.W.3d 38, 43 (Tex.App.-Tyler 2002, pet. denied).

■■■■■ In its first and second issues, the State contends that there is no evidence to support the "necessity" element. The degree of "necessity" required to support a finding of an implied easement by reservation is strict necessity. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 208 (Tex.1962). If a landowner can access his property by other means, he cannot claim a right by implication to pass over the land of another to reach his property. *Duff v. Matthews*, 158 Tex. 333, 311 S.W.2d 637, 640–41 (Tex.1958). The burden is on the party seeking to establish an implied reservation of a roadway to exclude, by proof, the possibility of another way of ingress and egress except the way claimed. *Id.* Easements by necessity are temporary because their existence is dependent on the necessity that created them. *Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397, 399 (1944). Easements by necessity terminate upon the cessation of the necessity. *Id.* Accordingly, the landowners were required to show that the necessity, if any, which existed at the time of the severance of the estates in 1893 existed until the time of trial. *See Miller*, 94 S.W.3d at 44.

The landowners do not have any evidence of the manner in which the Roys used the property at the time that the

---

6. A tract of land burdened by an easement is known as the servient estate, while the tract of land benefited by the easement is referred to as the dominant estate. *Daniel v. Fox*, 917 S.W.2d 106, 110 (Tex.App.-San Antonio 1996, writ denied). If the dominant estate is retained by the grantor and the servient estate is conveyed, an implied easement is said to have been "reserved." *Id.*

7. The landowners do not base their claim of an easement upon an established route in existence at the time the railroad right-of-way was created. An easement of this type is typically referred to as an implied easement.

*See Daniel*, 917 S.W.2d at 110. To establish an implied easement, a plaintiff must establish that (1) there was a unity of ownership between the dominant and servient estates and that the use was (2) apparent, (3) in existence at the time of the grant, (4) permanent, (5) continuous, and (6) reasonably necessary to the enjoyment of the premises granted. *Id.* Since the landowners are claiming an easement by necessity, they are not required to show the existence of a route that was apparent, continuous, and permanent at the time of the severance. *Id.* at 111.

railroad right-of-way came into existence in 1893. Instead, they rely upon the general allegation that the Roys would have needed to cross the right-of-way to access the northern strip of their property that was cut off from the remainder of their large tract by the right-of-way. They cite *Missouri–Kansas–Texas Ry. Co. of Texas v. Cunningham,* 273 S.W. 697, 699–701 (Tex.Civ.App.-Amarillo 1925, no writ), as a specific example of a Texas court recognizing the existence of an easement by necessity when a railroad right-of-way severs an enclosed tract of property. The court held in *Cunningham* that an easement is reserved by the landowner by implication to cross the right-of-way to access both portions of his enclosed property when his only access to both portions is across the right-of-way. *Id.*

While *Cunningham* appears to be applicable to this appeal, the evidence offered in support of the easement in *Cunningham* differs greatly from the evidence which exists in this appeal. The claimant in *Cunningham* was the original owner of the tract of property bisected by the railroad right-of-way. *Id.* at 698. He submitted evidence of his actual use of his tracts of property since the time of the severance and his manner of accessing one tract from the other by using a passageway under a wooden bridge that supported the railroad tract since its construction. *Id.*

The landowners base their claim of an easement by necessity on the assumption that the Roys would have needed to cross the right-of-way to access a thin, 2.5–acre wedge-shaped tract of their original tract. The southernmost portion of the landowners' two tracts are derived from this 2.5–acre tract. However, the landowners have no evidence of the manner in which the Roys may have actually used the 2.5–acre tract. In the absence of evidence of actual use, there is no evidence that the Roys had a need to access the 2.5–acre tract after the railroad crossed their property. There is no evidence that the Roys had a necessity to cross the right-of-way at a point located along the southern boundary lines of the landowners' tracts. Specifically, the 2.5–acre tract was approximately 2,900 lineal feet in length along the northern line of the right-of-way. The southern boundary of the landowners' two tracts (including Walne Street) only occupied approximately 1,200 feet of the 2.5–acre tract's linear run along the right-of-way. The landowners have no evidence that excludes the possibility that the Roys used some other point along the 2.5–acre's tract linear run to cross the right-of-way. Furthermore, the Roys possessed an additional 52.82–acre tract located along the northern line of the right-of-way that they could have used to access the 2.5–acre tract.[8] Moreover, the Roys conveyed the 2.5–acre tract in 1924. The landowners do not have any evidence that the necessity, which the Roys may have possessed to access the 2.5–acre tract in 1893, continued to exist after its conveyance.

The State's first and second issues are sustained. We do not reach the State's remaining issues pertaining to the landowners' claim of an easement by necessity (Issues Nos. Three, Four, Five, Six, Fifteen, and Sixteen) in light of our determination that there is no evidence to support the element of necessity. *See* TEX.R.APP. P. 47.1.

### Prescriptive Easement

A person acquires a prescriptive easement by the open, notorious, continu-

---

**8.** The 52.82–acre tract was located east of the 2.5–acre tract along the northern line of the railroad right-of-way. At the time of the right-of-way's acquisition in 1893, these two tracts were separated by a preexisting railroad right-of-way that intersected with the right-of-way at issue in this appeal.

ous, exclusive, and adverse use of someone else's land for ten years. *See Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex.1979); *Mack v. Landry*, 22 S.W.3d 524, 531 (Tex. App.-Houston [14th Dist.] 2000, no pet.); *Stallman v. Newman*, 9 S.W.3d 243, 248 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). The landowners rely upon the following affidavit testimony of John S. Beeson to support its prescriptive easement claim:

1. I am personally familiar with the 7.0065–acre and 5.7923–acre tracts of land that are involved in this lawsuit and the location of the road known as Walne Street, a 30–foot–wide road that runs in a north-south direction between the 7.0065–acre and 5.7923–acre tracts.

2. At least since 1975, the 7.0065–acre and 5.7923–acre tracts, as well as a(sic) properties located to the north of these tracts, have accessed the public highway system across the 100–foot–wide railroad right-of-way located to the south of these tracts using Walne Street, which is a private road paved over the railroad right-of-way. Immediately south of the railroad right-of-way is the public thoroughfare known as Old Katy Road. These properties do not have any other access to the public highway system except across the railroad right-of-way at this location to Old Katy Road. According to my research, this private road crossing at Walne Street was not subject to a written crossing agreement with the railroad.

Thus, the landowners contend that they possess a prescriptive easement to cross the right-of-way by virtue of Walne Street's existence at least since 1975.

In its seventh and eighth issues, the State contends that the landowners' prescriptive easement claim is barred by Tex. Civ. Prac. & Rem.Code Ann. § 16.030(b) (Vernon 2002). This statute provides that "[a] person may not acquire through adverse possession any right or title to real property dedicated to public use." The State formally dedicated the right-of-way for highway purposes upon its purchase from the railroad in 1992. The landowners contend the statute does not bar their claim because their prescriptive easement ripened into existence prior to 1992. Even if we assume that a prescriptive easement vested in favor of the landowners to cross the railroad right-of-way prior to its dedication by the State to public use in 1992, we conclude that it did not run against the State's interest in the property prior to the railroad's abandonment of the right-of-way.

The resolution of the landowners' prescriptive easement claim hinges upon two key questions. The first question concerns the nature of the State's property interest in the southern half of the railroad right-of-way prior to the railroad's abandonment. The State's characterization of its interest in the right-of-way has not been a model of clarity or consistency in this appeal. In its initial brief, the State described its interest in the right-of-way prior to abandonment as a "reversionary interest." The State subsequently characterized the interest as a "fee" interest in its reply brief.[9] The landowners contend that the State waived its argument that its pre-abandonment interest in the right-of-way constituted a fee interest. We disagree. The State's inter-

9. The landowners characterize the State's pre-abandonment interest as a "springing executory interest."

est in the right-of-way was created in the 1896 deed from the Roys to Harris County. The construction of an unambiguous deed is a question of law for the court to resolve. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex.1991); *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex.1986).

Ordinarily, we construe deeds by ascertaining the intent of the parties as expressed within the four corners of the instrument. *Luckel*, 819 S.W.2d at 461. The 1896 deed from the Roys to Harris County conveyed a fee simple interest in the land conveyed for Old Katy Road. *State v. Fuller*, 407 S.W.2d 215, 220 (Tex. 1966). However, as noted previously, the property description in the Roys' deed to Harris County did not include the adjacent property located within the railroad right-of-way. Texas courts have adopted a rule of construction that addresses this situation: "It is well settled that a deed to land abutting on a railroad right-of-way conveys title to the center of the right-of-way unless the contrary intention is expressed in the instrument." *Id.* at 218; *see Cox v. Campbell*, 135 Tex. 428, 143 S.W.2d 361, 366 (Tex.1940). The landowners argue that the rule recognized in *Fuller* does not apply in this case because the Roys owned the property on both sides of the railroad right-of-way when they conveyed the strip of land located south of the right-of-way to Harris County. We disagree. The Texas Supreme Court appeared to have adopted the exception urged by the landowners in the early case of *Couch v. Texas & P. Ry. Co.*, 99 Tex. 464, 90 S.W. 860, 860–61 (Tex. 1906). But as correctly noted by the Waco Court of Appeals in *Reagan v. Marathon Oil Co.*, 50 S.W.3d 70, 77–79 (Tex.App.-Waco 2001, no pet.), the Texas Supreme Court subsequently disavowed this exception to the general rule in *Haines v. McLean*, 154 Tex. 272, 276 S.W.2d 777, 780 (Tex.1955), and *Cox*, 143 S.W.2d at 365–66.

The supreme court stated in *Fuller* that the adjoining landowners "became the owners, subject to the easement" of their respective halves of the right-of-way by virtue of the deed conveying the adjoining property to them. 407 S.W.2d at 218. The Dallas Court of Appeals subsequently interpreted this aspect of *Fuller* in *Auerbach v. Dallas Area Rapid Transit*, No. 05–94–01207–CV, 1995 WL 447530 (Tex. App.-Dallas July 26, 1995, writ denied) (not designated for publication). In *Auerbach*, the court characterized the adjoining landowners' interest prior to abandonment as "a fee simple interest subject to an easement, not a conditional or contingent interest fee simple." *Id.* at *2. We agree with *Auerbach's* interpretation of *Fuller*. As an adjoining landowner, the State possessed a fee simple interest subject to the railroad's use of the right-of-way. The State's fee interest came into existence at the time of the 1896 deed from the Roys to Harris County. *Fuller*, 407 S.W.2d at 218.

The other key question to resolving the landowners' prescriptive easement claims relates to the nature of the railroad's right to use the right-of-way. While railroad rights-of-way are commonly referred to as easements, they do not have the attributes of a typical easement. Generally, an easement is a nonpossessory interest that authorizes its holder to use the property for only particular purposes. *See Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex.2002). For example, a landowner may continue to farm land that is subject to a nonpossessory easement for electrical power lines or pipelines. A railroad right-of-way differs from a typical easement because the railroad has a possessory interest in the right-of-way to the exclusion of others, including the titleholder of the property. As noted by the court in *Millmen Union v. Missouri–Kansas–Texas R. Co. of Texas*, 253 S.W.2d 450,

454 (Tex.Civ.App.-Waco 1952, writ ref. n.r.e.), "A railroad company has the exclusive use of the surface of the land on which its right of way is located." Thus, a railroad's right-of-way is more similar to a fee interest than a typical easement. The supreme court recognized this principle in *Thompson v. Janes*, 151 Tex. 495, 251 S.W.2d 953, 956 (Tex.1952), wherein it noted that a railroad right-of-way deprives the landowner of any beneficial use of the land.

■ Since the railroad had the exclusive use of the right-of-way, the State did not have a right of possession prior to abandonment. The State's interest prior to abandonment was akin to that of a remainderman to a life estate in that the State did not have a right to possess the right-of-way during the period of its operation. This court rejected the possibility of a remainderman's interest being subject to adverse possession during the term of the life tenancy in *Hensley v. Conway*, 29 S.W.2d 416, 417–18 (Tex.Civ.App.-Eastland 1930, no writ). We reasoned in *Hensley* that limitations does not accrue against the remainderman's interest while the life tenant remains alive because the remainderman does not have a possessory interest that would allow him to institute a trespass to try title action seeking the ouster of the trespasser. *Id.*

Our reasoning in *Hensley* is applicable to the facts in this appeal. It would be unreasonable for the State's right to possess the property in the future to be impaired by a prescriptive easement based upon acts occurring while the State did not have a right to possess the right-of-way. To hold otherwise would have required the State to institute an action to prevent the landowners from crossing the right-of-way

even though it was in the exclusive possession of the railroad. Accordingly, while the landowners may have established a prescriptive easement against the railroad's right to possess the right-of-way, their adverse use was ineffectual against the State's future right to possess the property. Any prescriptive easement that the landowners possessed against the railroad terminated when the railroad abandoned the property in 1998. Thus, the State's dedication of the right-of-way to public use in 1992 prevented the State's interest in the property from being impaired by a prescriptive easement after the railroad abandoned the right-of-way.

We sustain the State's seventh and eighth issues. We do not reach the State's remaining issues pertaining to the landowners' claim of a prescriptive easement (Issues Nos. Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen) in light of our determination that the landowners' claim is barred by statute. *See* Rule 47.1. We also do not consider the State's seventeenth issue concerning the trial court's rulings on the State's objections to the landowners' summary judgment evidence because it is not necessary to the final disposition of this appeal. *Id.*

*Motion for Rehearing*

■ At the end of their motion for rehearing, the landowners asserted a claim that they have a right of access to the highway (Old Katy Road) as abutting owners. The landowners waived this claim because they did not present it for consideration prior to the motion for rehearing.[10] Moreover, the same claim was made by the landowners in *Fuller* and rejected by the court. 407 S.W.2d at 220–21. We

---

**10.** The landowners disavowed that they were presenting a claim as "abutting" landowners

at both the trial court level and on appeal.

likewise reject the claim by the landowners in this case for the same reasons set forth in *Fuller*.

Additionally, the landowners have attempted to re-characterize our decision regarding their prescriptive easement claim as a tolling of limitations issue. That is incorrect. As the State argued, the adverse possession of the landowners prior to the abandonment by the railroad of the right-of-way (if any) simply ran against the railroad's possessory interest and not against the State's pre-abandonment interest. We do not reach the State's arguments that the landowners failed to establish their claims of adverse possession against the railroad.

### This Court's Judgment

We hold that the trial court did not have subject matter jurisdiction because sovereign immunity barred the landowners' suit against the State. Accordingly, we vacate the trial court's judgment and dismiss the landowners' claims for want of jurisdiction. Alternatively, in the event that jurisdiction exists, the judgment of the trial court is reversed, and judgment is rendered in favor of the State.