Opinion issued February 20, 2020



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00343-CV

_____

**HARRIS COUNTY, TEXAS, Appellant**

**V.**

**PARK AT WESTCREEK, LP, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-32867**

---

## O P I N I O N

Appellee, Park at Westcreek, LP (Westcreek), sought a declaration of its legal rights to an easement located in part on land owned by appellant, Harris County (the County). The County filed a "Cross-Action" against the interested parties, including PS LPT Properties Investors, PS Texas Holdings, LTD, and PS Texas Holdings II,

LTD (collectively, the Public Storage entities), asserting that the County had adversely possessed the property in question. Westcreek then amended its pleadings to include a takings claim and to assert that the dispute over the easement constituted a boundary dispute. The County and the Public Storage entities settled their dispute and nonsuited all claims between them. The County further filed a plea to the jurisdiction, asserting that it was immune to Westcreek's claims. The trial court denied the plea.

In three issues, the County argues that (1) the trial court erred in denying its plea because the court lacked jurisdiction to hear Westcreek's claim; (2) the County did not waive its immunity by filings its cross-action for adverse possession and later non-suiting both the adverse possession claim and other interested property owners, PS LPT Properties Investors, from the suit; and (3) the County is immune from Westcreek's inverse condemnation claim because Westcreek failed to allege an actionable inverse condemnation claim.

We affirm.

## Background

The County, Westcreek, and the Public Storage entities own portions of what was once a single 12.53-acre tract in Harris County, Texas, located east of the Loop 610 West frontage road and north of Westheimer. The prior owners of the 12.53-acre tract dedicated an easement across the tract in 1973, providing that the easement

2

consisted of a strip of land 40 feet wide, crossing the tract from the Loop 610 frontage road westward over the property (the Easement). In the "declaration and grant of right-of-way and easement," the prior owners and their tenants declared their "desire to dedicate and establish the Subject Property as a private right-of-way and easement for road purposes for use as such." The declaration stated that the parties "do hereby dedicate and establish, and declare the Subject Property to be subject to, a nonexclusive right-of-way and easement for road purposes which shall be privately owned and maintained but dedicated to the public use as such." The dedication further stated, "If the public ever ceases to use the right-of-way and easement herein granted for road purposes, such right-of-way and easement shall thereupon terminate and be of no further force and effect." The terms of the easement were binding on successors and assigns.

The County and a Public Storage entity subsequently purchased portions of the tract fronting the Loop 610 frontage road. In 1993, Westcreek likewise purchased a portion of the tract situated to the west of the County's property. Westcreek was assigned a nonexclusive right to use the Easement, which occupied what is now the southern 20 feet of the County's property and the northern 20 feet of the Public Storage entity's property. The County's property is improved with two office buildings and a four-level parking garage. The property is accessed from the Loop 610 frontage road by a "driveway" that is 23 feet wide and that goes from the

3

frontage road into the parking garage. The County's property also has a fitness and recreation park. The Easement encompasses the County's driveway, parking spaces, and the fitness and recreation park.

Westcreek has an apartment building on its land, with access from two other nearby roads. Westcreek sought permission from the County to construct an entrance and exit road on a portion of the Easement to increase accessibility for apartment residents. The County denied Westcreek's requests.

Westcreek filed its original petition against the County on May 19, 2016, asserting that it purchased its property subject to the right to use the Easement, stating its understanding that "the legal position of the County is that the Easement has been abandoned," and seeking "a declaration of the existence of the Easement." Westcreek did not seek any monetary relief.

On October 21, 2016, the County filed its "First Amended Original Answer and Cross-Action."[1] The County sought a declaration that it was entitled to title and possession of the Easement through adverse possession, or, alternatively, and to the extent Westcreek succeeded in its claim, that the County was entitled to recover the value of its improvements constructed on the Easement. In its Cross-Action, the

---

[1]     The County identified its pleading as a "Cross-Action," but it is more properly a counterclaim as to Westcreek and a third-party claim as to the Public Storage entities. However, we refer to it as a "Cross-Action" in conformity with the County's terminology.

County stated: "Defendant, Harris County, acting now as Cross-Plaintiff, complains of Park at Westcreek, LP and PS Texas Holding II, LTD, Cross-Defendants," and the County identified the "three underlying fee owners to the Subject Property" as including the County, Westcreek, and the Public Storage entities. The County alleged that it "entered the real property . . . on May 3, 1993, and has held the land in peaceable and adverse possession from that date until the present time," that its adverse possession "has thus continued for more than 10 years," and that, "during this time, Cross-Plaintiff [County] has used and enjoyed the property."

On November 14, 2016, the Public Storage entities filed an answer as third-party defendants generally denying the County's claims and asserting various special exceptions, verified denials, and affirmative defenses. In relevant part, the Public Storage entities asserted that PS LPT Properties Investors was a record owner of the property at issue and asserted its own interest in the Easement.

On March 21, 2017, the Public Storage entities supplemented their answer and asserted "affirmative claims," alleging that the "allegations in [the County's] Cross Action amount to a 'taking' and that [the Public Storage entities] are entitled to just compensation." The Public Storage entities alleged in the alternative that the County is liable for inverse condemnation because the County "intentionally performed certain acts that resulted in a taking of property for public use from" the Public Storage entities when it "built improvements and fencing on an easement

5

falling on [PS entities'] fee simple Property." The Public Storage entities further sought a declaration of their rights to the Easement and attorney's fees.

On June 21, 2017, the County filed its plea to the jurisdiction, asserting that Westcreek "has not pled the necessary legislative waiver and has not and cannot affirmatively demonstrate that governmental immunity from suit has been waived for its claim for declaratory relief." It further asserted that Westcreek did not plead any waiver of the County's governmental immunity, and it asserted the Uniform Declaratory Judgment Act (UDJA) does not contain a waiver of immunity for Westcreek's claim.

On July 21, 2017, Westcreek filed is first amended petition, seeking "monetary relief of $100,000 or less and nonmonetary relief." Westcreek continued to seek a declaration of its rights under the Easement, and it added an additional or alternative request for declaratory judgment pursuant to Civil Practice and Remedies Code section 37.004(c), purportedly allowing the court to determine "the proper boundary line of the Easement as between the adjoining property owners—Westcreek and the County." Westcreek also added a constitutional takings claim, asserting that by preventing Westcreek from using the Easement, the County "impermissibly appropriated, invaded, damaged and/or destroyed Westcreek's private property for public use without adequate compensation." Also on July 21,

2017, Westcreek answered the County's cross-action with a general denial and asserted the affirmative defenses of limitations, offset, and estoppel among others.

On July 25, 2017, Westcreek responded to the County's plea to the jurisdiction. Westcreek asserted that, "by asserting its Cross-Action, the County has left its sphere of immunity and chosen to interject itself into litigation seeking affirmative claims for relief," citing *Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006). Westcreek further argued that immunity is "undisputedly waived" for its takings claim and its claim seeking a declaration resolving the boundary dispute with the County.

On July 27, 2017, the County replied to Westcreek's response to the plea to the jurisdiction. It asserted that *Reata* did not apply here because "[i]mmunity is only waived to the extent monetary claims against the [governmental] entity offset the entity's claim," relying on *City of Dallas v. Albert*, 354 S.W.3d 368 (Tex. 2011). The County further argued that Westcreek's takings claim was barred by the statute of limitations because Westcreek "never acted upon the conditions of the easement until it filed its declaratory judgment" more than 20 years after the purchase of the property. The County stated, "Defendant understands that Plaintiff's inverse condemnation claim cannot be disposed of by a Plea to the Jurisdiction [and] thus will be disposed by Summary Judgment at a later date." Finally, the County argued that Westcreek's attempt to allege a waiver of immunity by asserting a boundary

7

dispute "is incorrect and must be dismissed" because Civil Practice and Remedies Code section 37.004(c) does not constitute a waiver of immunity in a boundary dispute.

On March 21, 2018, the County and Public Storage entities filed a "Joint and Agreed Order of Non-Suit and Dismissal" that asserted that all causes of action between the County and the Public Storage entities were dismissed with prejudice. The trial court signed the order on March 26, 2018. The nonsuit does not address any claims by the County against Westcreek.

On April 10, 2018, the trial court denied the County's plea to the jurisdiction without stating the basis for its ruling. This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(8) (permitting appeal from interlocutory order denying plea to jurisdiction).

**Plea to Jurisdiction**

All three of the County's issues challenge the trial court's denial of the plea to the jurisdiction, in which the County asserted that it was immune from Westcreek's claims.

**A.     Standard of Review and Governmental Immunity**

"Sovereign immunity—usually called governmental immunity when referring to political subdivisions—protects governmental entities against suits and legal liabilities." *Hillman v. Nueces Cty.*, 579 S.W.3d 354, 357 (Tex. 2019); *see Wichita*

8

*Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (discussing common-law doctrine of governmental immunity that protects political subdivisions of the State, including counties). Governmental immunity from suit defeats a trial court's jurisdiction. *Hillman*, 579 S.W.3d at 357; *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Whether a trial court has jurisdiction is a question of law subject to de novo review. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

The doctrine of governmental immunity has existed for more than 600 years and was first recognized as a principle of Texas jurisprudence more than 170 year ago. *Hillman*, 579 S.W.3d at 361 (citing *Hosner v. DeYoung*, 1 Tex. 764 (1847) ("[N]o state can be sued in her own courts without her consent, and then only in the manner indicated by that consent.")); *see also Reata Constr.*, 197 S.W.3d at 374 ("Sovereign immunity is a common-law doctrine that initially developed without any legislative or constitutional enactment."). Despite its "inherent unfairness," the doctrine exists to shield "the public from the costs and consequences of improvident actions of their governments" and to ensure "that the taxes the public pays are used 'for their intended purposes.'" *Hillman*, 579 S.W.3d at 361 (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006), and *Reata Constr.*, 197 S.W.3d at 375).

Generally, Texas courts defer "to the legislature, as the policy-making branch of government, 'to decide whether and to what extent that immunity should be

9

waived.'" *Id.* (quoting *City of Galveston v. State*, 217 S.W.3d 466, 472–73 (Tex. 2007)). Governmental immunity from suit may be waived only by clear and unambiguous statutory language. *See* TEX. GOV'T CODE ANN. § 311.034 ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."); *IT–Davy*, 74 S.W.3d at 854.

Despite this deference to the legislature regarding waiver of immunity, "the judicial branch retains the authority and responsibility to determine whether immunity exists in the first place, and to define its scope." *Hillman*, 579 S.W.3d at 361; *Reata Constr.*, 197 S.W.3d at 375 ("We have consistently deferred to the Legislature to *waive* such immunity.") (emphasis original). "Therefore, it remains the judiciary's responsibility to define the boundaries of the common-law doctrine and to determine under what circumstances sovereign immunity exists in the first instance." *Reata Constr.*, 197 S.W.3d at 375.

In "defin[ing] the boundaries" of the governmental-immunity doctrine, the Supreme Court of Texas has been mindful of the policy issues involved:

> A lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes. The Legislature has expressed its desire to preserve its interest in managing fiscal matters through the appropriations process by maintaining sovereign immunity unless it has clearly and unambiguously stated otherwise. The United States Supreme Court has also recognized that suits for money damages against states "may threaten the financial integrity of the States" and that "at the time of the founding, many of

the States could have been forced into insolvency but for their immunity from private suits for money damages."

*Id.* (internal citations omitted). These policy concerns do not carry the same force, however, when a governmental entity chooses to engage in litigation:

> [I]f the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs. If the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted. Therefore, a determination that a governmental entity's immunity from suit does not extend to a situation where the entity has filed suit is consistent with the policy issues involved with immunity. In this situation, we believe that it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it.

*Id.* at 375–76 (internal citations omitted). The supreme court has held that "where the governmental entity has joined into the litigation process by asserting its own affirmative claims for monetary relief, we see no ill befalling the governmental entity or hampering its governmental functions by allowing adverse parties to assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity." *Id.* at 376–77; *see also Tex. Dep't of Transp. v. Crockett*, 257 S.W.3d 412, 415 (Tex. App.—Corpus Christi–Edinburg 2008, pet. denied) (recognizing that, by limiting abrogation of immunity doctrine to claims that are related to governmental entity's own claim, policy decisions regarding government spending remain intact).

11

**B.      The County's Immunity**

The County asserts that it is generally immune from suits for land. *See, e.g.*, *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011) ("When in this state the sovereign is made a party defendant to a suit for land, without legislative consent, its plea to the jurisdiction . . . based on sovereign immunity should be sustained[.]") (quoting *State v. Lain*, 349 S.W.2d 579, 582 (Tex. 1961)); *Triple BB, LLC v. Vill. of Briarcliff*, 566 S.W.3d 385, 396 (Tex. App.—Austin 2018, pet. denied) (holding that plaintiff's claim that it gained prescriptive easement to governmental entity's land was "in substance, a 'suit for land' that is barred by governmental immunity"); *City of Dallas v. Turley*, 316 S.W.3d 762, 773 (Tex. App.—Dallas 2010, pet. denied) (holding that governmental immunity barred UDJA suit against city to establish that city had abandoned certain easements); *State v. Beeson*, 232 S.W.3d 265, 271–72 (Tex. App.—Eastland 2007, pet. dism'd) (holding that sovereign immunity barred UDJA suit against State to establish easement in real property).

Westcreek argues, however, that by filing its Cross-Action, the County implicated the holding in *Reata Construction*. We agree with Westcreek.

In *Reata*, the supreme court held:

[T]he decision by the City of Dallas to file suit for damages encompassed a decision to leave its sphere of immunity from suit for claims against it which are germane to, connected with and properly defensive to claims the City asserts. Once it asserts affirmative claims

12

for monetary recovery, the City must participate in the litigation process as an ordinary litigant, save for the limitation that the City continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset the City's claims.

197 S.W.3d at 377.

Here, by filing its Cross-Action asserting an adverse possession claim to ownership of the Easement, which necessarily encompasses the validity of the Easement, the County made "a decision to leave its sphere of immunity from suit for claims against it which are germane to, connected with, and properly defensive to claims" the County asserts. *See id.* Westcreek's claims—all of which seek a determination of its rights to the Easement—are germane to, connected with, and properly defensive to the County's claims that the Easement has been abandoned and is now owned exclusively by the County through adverse possession. Having made the decision to assert affirmative claims, "the [County] must participate in the litigation process as an ordinary litigant," subject to the remaining immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset its own claims. *See id.*

The County argues that it did not waive its governmental immunity from Westcreek's claims by filing its adverse possession claim against the Public Storage entities and later nonsuiting both the claim and the Public Storage entities from the suit. The County argues in its brief that a governmental entity does not "entirely waive its immunity from suit just because it files a counterclaim" and that

13

"[i]mmunity was only waived to the extent monetary claims against the entity offset the entity's claims," citing *Reata* and *Albert*. The County thus argues that because "there are no claims for monetary damages nor is there any offset," the reasoning from *Reata* does not apply and the County's immunity from suits for land bars Westcreek's suit. The County's argument misconstrues the record and misapplies the law.

We first observe that the County named the Public Storage entities and Westcreek as defendants in its Cross-Action by "complain[ing] of Park at Westcreek, LP and PS Texas Holding II, LTD, Cross-Defendants," and identifying both Westcreek and the Public Storage entities as "underlying fee owners to the Subject Property." Although the County and the Public Storage entities mutually nonsuited claims between them, nothing in the record indicates that the County nonsuited its claim against Westcreek. And, regardless of the extent of the nonsuit, the County's nonsuiting of its affirmative claims for relief does not impact our analysis here. In *Albert*, the Texas Supreme Court held:

> Once a governmental entity has asserted an affirmative claim for monetary relief, it must participate in the litigation process as an ordinary litigant as to that claim. And when a governmental entity asserts affirmative claims for monetary recovery, whether by filing suit or by counterclaim, the trial court acquires jurisdiction over the entity's claims and certain offsetting, defensive claims asserted against the entity. That is not because the entity effected a change in its immunity by filing a claim, but because the judiciary has abrogated the entity's common law immunity from suit as to certain offsetting claims.

14

354 S.W.3d at 375 (internal citations to *Reata*, 197 S.W.3d at 377, omitted). The supreme court went on to hold that, under typical litigation rules, the City was entitled to nonsuit its claims, but the nonsuit "is not allowed to prejudice the right of an adverse party to be heard on a pending claim for affirmative relief." *Id.* (citing, e.g., TEX. R. CIV. P. 162). The *Albert* court held, "Because the [plaintiff] Officers had affirmative claims pending when the City nonsuited its counterclaim, the trial court retained jurisdiction over the Officers' claims to the extent it had acquired it." *Id.* Similarly, here, any nonsuit by the County cannot prejudice the right of Westcreek to be heard on its pending claims for affirmative relief to the extent that the trial court acquired jurisdiction. *See id.*

We likewise reject the County's argument that it was required to plead a claim for monetary damages for the trial court to acquire jurisdiction. While *Reata* involved a claim for monetary damages, we do not read *Reata* as holding that its reasoning can *only* apply to suits for money damages. *See* 197 S.W.3d at 377–78. And the Texas Supreme Court has subsequently applied *Reata's* reasoning in other contexts. In *Hughes v. Tom Green County*, the supreme court considered *Reata* in a dispute in probate over title to property. 573 S.W.3d 212, 214, 219 (Tex. 2019). The *Hughes* court expressly rejected the argument that the County asserts here:

> Hughes submits that *Reata's* application is not dependent on the assertion of monetary damages but rather on the relationship of the parties' adverse claims. He maintains that the issue whether offsetting adverse title claims to the same property are immune from suit cannot

15

be determined by whether the opposing parties are asserting claims seeking damages "against each other" as in prior cases, but rather must be found in the basic policy principles enunciated by this Court in *Reata* and other cases when defining the limits of that immunity. We agree and turn next to the judicial principles that define the boundaries of governmental immunity.

*Id.* at 218.

The County here "asserted a claim for affirmative relief" by filing its Cross-Action asserting its exclusive right to the Easement in which Westcreek also has an interest, so the County "does not have immunity from suit for opposing claims that are germane, connected, and properly defensive to [its] claims." *See Hughes*, 573 S.W.3d at 219. As in the county's suit for title in *Hughes*, the County's Cross-Action implicates that same policy principles and law that define the boundaries of governmental immunity. *See id.* at 218–19. The County here "cannot complain about the burdens of litigation in this context because it has voluntarily undertaken them by affirmatively asserting its own claims." *Id.* at 219. "[S]eparation-of-powers concerns are not implicated to the extent the government seeks affirmative relief," and, indeed, the County's Cross-Action "invokes the judiciary's duty to afford fundamental fairness in the administration of justice to all litigants." *Id.*; *see also Reata*, 197 S.W.3d at 375–76 ("[W]e believe that it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it."). We conclude that the

16

County elected to pursue affirmative claims and is now "bound to participate in the litigation process as an ordinary litigant." *Id.* (quoting *Albert*, 354 S.W.3d at 377).

We conclude that the County's claim for affirmative relief invoked the trial court's jurisdiction over the County's own claims and those claims of Westcreek's that are connected, germane, and properly defensive to the County's claims, i.e., the claims regarding status of the Easement. Accordingly, we overrule the County's appellate issues one and two, complaining that the trial court erred in denying the plea to the jurisdiction because the court lacked jurisdiction to hear Westcreek's claim and because the County did not waive its immunity by filings its cross-action.

Finally, the County asserts that it is immune from Westcreek's constitutional taking or inverse condemnation claim because Westcreek failed to allege an actionable inverse condemnation claim. We observe, however, that the County has itself acknowledged that the nature of Westcreek's property interest here necessarily depends on the status of the Easement. The County argues in its reply brief, "Here, if the easement has been abandoned—and, it is the County's position that it has— Westcreek does not have any sort of vested property interest." This argument implicates the underlying merits of the case, which we generally do not consider in reviewing a plea to the jurisdiction, and it demonstrates the existence of fact issues that must be resolved by the fact finder before dismissal on jurisdictional grounds would be appropriate. *See, e.g.*, *Tex. Dep't of Parks & Wildlife v. Miranda*, 133

17

S.W.3d 217, 226–28 (Tex. 2004) ("If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder."); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) ("A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit."). We thus overrule the County's third appellate issue.

## Conclusion

We affirm the order of the trial court denying the County's plea to the jurisdiction.

Richard Hightower
Justice

Panel consists of Justices Goodman, Landau, and Hightower.