**Opinion filed January 22, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00034-CV
_____

## VETERANS LAND BOARD OF THE STATE OF TEXAS ET AL, Appellants

## V.

## BETTY YVON LESLEY ET AL, Appellees

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause No. CV-28,679**

## O P I N I O N

Appellees own non-executive mineral interests in lands underlying the Mountain Lakes Development, a residential subdivision in Erath County, Texas. They brought this suit against the developer of the subdivision, the property owners' association for the development, and the lot owners in the subdivision. Appellees sought declaratory judgment on a number of issues, and they also alleged various claims for affirmative relief against appellants. This case involves two primary issues: (1) who owned the executive rights and (2) did the owner or owners of the executive rights breach a duty to the non-executives. On these issues, the trial court granted summary judgment in

favor of appellees on their claims that the developer owned the executive rights, that it owed appellees a duty to lease the minerals, and that it breached its duty to lease. In this appeal, appellants challenge the trial court's order granting and denying summary judgment and order denying plea to the jurisdiction. We reverse the judgment of the trial court.

*The Parties*

Appellants are (1) Bluegreen Southwest One, L.P. (Bluegreen), the developer of the Mountain Lakes Development; (2) approximately 460 lot owners in the Mountain Lakes Development (Landowner Appellants); and (3) the Veterans Land Board of the State of Texas (VLB). The VLB purchased lots in the development and then sold them to veterans as part of a program that was designed to assist veterans in obtaining property with low interest loans. Appellees sued the VLB as a lot owner defendant.

Appellees are (1) Betty Yvon Lesley and her husband, Kenneth Lesley; (2) Kenneth Lesley and Perry Elliott, Independent Executors of the Estate of Bobby John Foster, Deceased;[1] (3) Richard H. Coffey, Sr.; (4) Singin' Hills Minerals, Ltd.; and (5) JPMorgan Chase Bank, N.A., as trustee of eighteen trusts. Some of the claims in this case are common to all appellees. In addition to these common claims, the Lesley Appellees (groups (1) and (2) above) brought claims for reformation of deeds and for breach of contract. We will refer to "appellees" when addressing the common claims. We will refer to the "Lesley Appellees" when addressing claims that are unique to them.

*Introduction*

The Mountain Lakes Development contains about 4,100 acres of land. The development is located on land that was, at one time, owned by Wyatt C. Hedrick and his wife, Mildred Sterling Hedrick. The Hedricks owned the surface estate and the mineral estate in the subject property. On November 6, 1952, the Hedricks executed a deed to H.S. Foster. Under the deed, "[the Hedricks] granted, sold and conveyed to [H.S. Foster] a full interest in the surface estate and an undivided one-half (½) interest in the oil, gas and other minerals, except that [H.S. Foster] shall have full, complete and sole right to execute oil, gas and mineral leases covering all the oil, gas and other minerals in the following described land."

---

[1]Bobby John Foster died on September 27, 2005.

H.S. Foster had two children, Betty Yvon Lesley and Bobby John Foster. In 1966, Betty Yvon Lesley and her husband, Kenneth Lesley, acquired from H.S. Foster the surface estate and one-half of the mineral estate in 174.35 acres of the subject property. When H.S. Foster died, Betty Yvon Lesley and Bobby John Foster inherited the entire surface estate and one-half mineral interest in 3,923.58 acres of the subject property.

In 1998, Bobby John Foster, Betty Yvon Lesley, and Kenneth Lesley sold the surface estate of the subject property to Bluff Dale Development Corporation for about $2,000,000. Bluff Dale intended to develop the property as a residential subdivision or to sell it to another residential developer. On February 17, 1998, Bobby John Foster and Betty Yvon Lesley, joined by her husband Kenneth Lesley, executed a deed to Bluff Dale covering 3,923.58 acres of the subject property. On September 30, 1998, Betty Yvon Lesley and Kenneth Lesley executed a deed to Bluff Dale covering an additional 174.35 acres of the subject property. Both deeds provided:

> Grantors will be reserving unto themselves, their heirs, and assigns, one-fourth (1/4) of the oil, gas, sulphur and other minerals to which Grantors are now entitled to in all of the lands covered by this conveyance. It is understood and agreed, however, that Grantee, his heirs, successors and assigns, shall have full rights to execute all future oil, gas, sulphur and other mineral leases for such bonuses, such delay rentals and for such terms as Buyers may think proper, but Grantors shall not be required to execute any such leases, but shall be entitled to receive one-fourth (1/4) of all bonuses and delay rentals, whether the same be paid in cash, by overriding royalties, production payments or in any other manner.

By deeds dated September 25, 1998, and December 30, 1998, Bluff Dale conveyed its interests in the subject property to Properties of the Southwest, L.P., subject to "[a]ny prior reservations or conveyance[s] of oil, gas and other minerals, restrictions, covenants, conditions, rights-of-way and easements of record." On March 15, 1999, Properties of the Southwest changed its name to Bluegreen.

Bluegreen developed the property as the Mountain Lakes Development in a series of five sections. In connection with developing each section, Bluegreen filed and recorded declarations of covenants, conditions, and restrictions. The declarations contained the following use restriction, among others:

> Section 3.12   Mineral Development. No commercial oil drilling, oil development operations, oil refining, quarrying or mining operation of any kind shall

3

be permitted. No derrick or other structures designed for the use of boring for oil or natural gas shall be erected, maintained or permitted upon any Tract.

Section 9.02 of the declarations provided that "[t]his Declaration may be amended or changed, in whole or in part, at any time by the written agreement or signed ballot of two-thirds (2/3rds) of the Owners (including the Developer) entitled to vote."

Bluegreen sold home sites to about 1,700 purchasers. Although Bluegreen did not use identical deeds in connection with all the sales, one type of deed that Bluegreen commonly used provided as follows:

Reservation from conveyance: None.

Exceptions to Conveyance and Warranty:

1. Any and all restrictions, covenants, and easements, if any, relating to the hereinabove described property, but only to the extent they are still in effect, shown of record in Erath County, Texas, and to all zoning laws, regulations or ordinances of municipal and other governmental authorities, if any, but only to the extent they are still in effect, relating to the hereinabove described property.

2. Undivided one-half of all oil, gas and other minerals of every character in and under the herein described property reserved by Wyatt Hedrick, et ux, in instrument recorded in Volume 339, Page 172, Deed Records, Erath County, Texas.

3. Undivided one-fourth of all oil, gas and other minerals of every character in and under the herein described property reserved by Bobby John Foster, et al in instrument recorded in Volume 948, Page 639, Deed Records, Erath County, Texas.

*Proceedings in Trial Court*

On October 12, 2005, appellees sued Bluff Dale, Bluegreen, the Property Owners' Association of Mountain Lakes Ranch (POA), and about 1,700 individual lot owners. In their petition, appellees alleged, among other things, (1) that they owned undivided mineral interests in the subject property; (2) that, as a result of the transactions described above, Bluegreen had acquired the executive rights and had later transferred "all the executive rights to the lot owners of all minerals underlying each of said lots"; (3) that the defendants as their mineral co-tenants and as owners of the executive rights owed a duty of utmost good faith to them as non-executive mineral interest owners; and (4) that "[s]uch duty [was] fiduciary in nature and include[d] the duty to lease all of the minerals for exploration and development of oil and gas." Appellees alleged that all defendants had breached

4

this fiduciary duty and, specifically, that Bluegreen and the POA had breached this duty by creating the restriction that prohibited mineral development. Appellees also alleged claims for breach of contract and sought a declaratory judgment on a number of issues, including declarations as to their rights as non-executive mineral interest owners and as to the defendants' duties as owners of the surface, the executive rights, and the remaining minerals.

In an amended pleading filed in October 2006, appellees changed their position as to who owned the executive rights. They no longer alleged that Bluegreen had transferred the executive rights to the lot owners. Instead, they alleged that, because Bluegreen had listed the restrictive covenants as an exception "to the conveyance" in its deeds to the lot owners and because the restrictions prohibited mineral development, Bluegreen had not effectively transferred the executive rights to the lot owners. In their live pleadings, appellees sought declarations, among others, concerning (1) ownership of mineral interests, (2) ownership of the executive rights, (3) breach of duty owed by the owner of the executive rights, and (4) applicability of the covenants and subdivision plats to the mineral estate. Appellees alleged breach of fiduciary duty claims and breach of contract claims against the defendants. Appellees also alleged tortious interference claims and intentional invasion or interference with property rights claims against Bluegreen. The Lesley Appellees alleged an additional breach of contract claim. They also sought to reform the mineral reservation clauses in their deeds to Bluff Dale on the ground of mutual mistake.

Many of the parties filed traditional and no-evidence motions for summary judgment. The appellate record contains twenty-six motions for summary judgment, including supplemental motions, a clerk's record, eleven supplemental clerk's records, and eight reporter's records. The VLB filed a plea to the jurisdiction based on sovereign immunity. On November 7 and 8, 2006, and on January 16 and 17, 2007, the trial court heard the motions for summary judgment and the plea to the jurisdiction. On January 17, 2007, the trial court entered its order granting and denying summary judgment and order denying plea to the jurisdiction. In the order, the trial court granted (1) appellees' November 3, 2006 request for summary judgment and December 26, 2006 supplemental motion for partial summary judgment asserting that Bluegreen owned the executive rights; (2) appellees' July 18, 2006 motion for partial summary judgment, October 10, 2006 supplemental motion for partial summary judgment, and December 26, 2006 second supplemental

motion for summary judgment asserting that the restrictive covenants were not enforceable;[2] (3) appellees' December 26, 2006 motion for partial summary judgment against Bluegreen asserting that it breached its duty to lease and breached its contract; and (4) the Lesley Appellees' December 20, 2006 motion for partial summary judgment on the deed reformation claims asserted in their second supplemental original petition and on the POA's and Bluegreen's counterclaims for declaratory judgment relating to the deed reformation claims.

In the order, the trial court denied Bluegreen's October 23, 2006 traditional motion for summary judgment on appellees' tortious interference claims and no-evidence motion for summary judgment on appellees' breach of contract, breach of fiduciary duty, and tortious interference claims. The trial court granted the POA's July 26, 2006 no-evidence motion for summary judgment and October 24, 2006 motion for partial summary judgment on appellees' breach of contract and breach of fiduciary duty claims to the extent that the trial court declared that the POA was not liable to appellees for breach of any duty associated with ownership of the executive rights because the POA did not own, and had not owned, the executive rights. Otherwise, the trial court denied these motions. The trial court also denied the POA's December 21, 2006 supplemental traditional and no-evidence motions for summary judgment. The trial court granted the landowner defendants' October 20, 2006 traditional and no-evidence motions for summary judgment on appellees' damages claims to the extent that the trial court declared that the landowner defendants were not liable to appellees for breach of any duty associated with ownership of the executive rights because the landowner defendants did not own, and had not owned, the executive rights. Otherwise, the trial court denied the landowner defendants' motions. The trial court also denied the SWM clients' (some of the lot owner defendants) December 26, 2006 motion for summary judgment, the landowner defendants' December 26, 2006 motion for summary judgment, and Bluegreen's December 28, 2006 motion for summary on the Lesley Appellees' deed reformation claims. The trial court granted other lot owner defendants' motions for summary judgment to the extent that the trial court declared that they were not liable to appellees for breach of any duty associated with ownership of the executive rights because the lot owner defendants did not own, and had not owned, the executive rights.

[2]Thus, although appellees now contend that Bluegreen in effect kept the executive rights because Bluegreen had imposed the restrictive covenants, appellees also sought to have the restrictive covenants declared unenforceable.

Otherwise, the trial court denied the other lot owner defendants' motions for summary judgment. The trial court denied the VLB's plea to the jurisdiction.

The trial court also ordered that any motions that were not expressly granted in the order were denied and that all defendants were permanently enjoined from attempting to enforce the declarations of covenants. In the order, the trial court stated that the order did not dispose of the following claims: (1) any remaining claims by appellees for damages against Bluegreen; (2) any remaining claims by the POA and any lot owner defendants against Bluegreen; and (3) any counterclaims against plaintiffs. The trial court entered an order severing the claims disposed of in its order granting and denying summary judgment and order denying plea to the jurisdiction from the remainder of the claims in the suit. This appeal involves the claims that were disposed of in the trial court's order granting and denying summary judgment and order denying plea to the jurisdiction.

*The Trial Court's Declaratory Judgment*

*Ownership of Leasing Rights.*

The trial court determined that Bluegreen owned the executive rights. The trial court made the following declaration in Section IV:

> The Court DECLARES that the Bluff Dale to Bluegreen Deeds conveyed to Bluegreen the Leasing Rights. Subsequent to its acceptance of the Leasing Rights under the Bluff Dale to Bluegreen Deeds, Bluegreen did not effectively convey, or assign, all, or any portion of, the Leasing Rights to any Lot Owner Defendant, to the POA, or to any other third party. Therefore, Bluegreen is, and remains, the owner of the Leasing Rights it acquired under the Bluff Dale to Bluegreen Deeds. Accordingly, Bluegreen is the sole and exclusive owner of the Leasing Rights.

*Breach of Executive Duty Owed by Owner of Leasing Rights.*

The trial court determined that Bluegreen, as the owner of the executive rights, breached the duty it owed to appellees, as non-executive mineral owners. The trial court made the following declarations in Section V:

> The Court DECLARES that the Owner of the Leasing Rights owes to the non-executive mineral owners the same degree of diligence and discretion in exercising the rights and powers granted under Leasing Rights as would be expected of the average landowner who because of self-interest is normally willing to take affirmative steps to seek or to cooperate with prospective lessees (hereinafter the "Duty to Lease").

7

The Court DECLARES that because neither the Lot Owner Defendants nor the POA own, or have owned, the Leasing Rights, no Lot Owner Defendant or the POA has breached the Duty to Lease owed to the Plaintiffs.

The Court DECLARES that Bluegreen, as owner of the Leasing Rights, breached the Duty to Lease by: entering into a Deed of Trust burdening the Leasing Rights; creating and recording the Declarations of Covenants and the Plats; failing to provide notice of the filing of the Declarations of Covenants as is required under the Lesley/Foster to Bluff Dale Deed and the Lesley to Bluff Dale Deed; and failing to lease the Plaintiffs' minerals pertaining to the Subject Land when there was opportunity to do so.

The Court DECLARES that Bluegreen breached the contractual requirement of the Lesley/Foster to Bluff Dale Deed and the Lesley to Bluff Dale Deed by failing to give the requisite notice of the filing of the Declarations of Covenants.

*Applicability of the Declarations of Covenants and Plats Upon the Mineral Estate.*

The trial court determined that the declarations of covenants and plats were unenforceable.

The trial court made the following declarations in Section VI:

The Court DECLARES that the Declarations of Covenants and Plats expressly purport to prohibit and restrict the exploration for, development, production and marketing of oil, gas and other minerals which may be located in, on, or under the Subject Land.

The Court DECLARES that neither the Declarations of Covenants, nor the Plats, are enforceable, and cannot be used, to prohibit or restrict in any way, the exploration for, development of, production of, and/or marketing of oil, gas and/or other minerals which may be located in, on, or under the Subject Land.

The Court DECLARES that neither the Declarations of Covenants, nor the Plats, are enforceable, and cannot be used, to prohibit or restrict in any way, the execution of a lease or leases covering the oil, gas, or other minerals which may be located in, on, or under the Subject Land.

The Court DECLARES that neither the Declarations of Covenants, nor the Plats, are enforceable, and cannot be used, to prohibit or restrict in any way, the Plaintiffs' rights as mineral co-tenants to self-exploration or self-development of Plaintiffs' mineral interests in the Subject Land.

The Court DECLARES that Plaintiffs' minerals in, on, or under the Subject Land are not bound, burdened, or encumbered by any covenants entered post-severance of the Plaintiffs' minerals from the surface estate.

8

The Court DECLARES that the Plaintiffs' minerals in, on, or under the Subject Land were severed from the surface estate on November 5, 1952 (pursuant to the Hedrick to Foster Deed), on February 17, 1998 (pursuant to the Lesley/Foster to Bluff Dale Deed), and September 30, 1998 (pursuant to the Lesley to Bluff Dale Deed).

The Court DECLARES that the remaining one-fourth mineral interest not owned by the Plaintiffs pertaining to the Subject Land was severed from the surface estate because of the partitioning of the surface estate by virtue of the recording of the Declarations of Covenants and the recording of the Plats.

*Ownership of Mineral Interests.*

The trial court's declarations related to the Lesley Appellees' claims for reformation of the February 17, 1998 deed from Bobby John Foster and Betty Yvon Lesley to Bluff Dale and the September 30, 1998 deed from Betty Yvon Lesley and Kenneth Lesley to Bluff Dale. In Section II, the trial court declared, in relevant part, as follows: (1) that the parties to the deeds intended for the Lesley Appellees to reserve an undivided one-fourth mineral interest, without leasing rights, in the subject lands; (2) that scrivener's errors in the deeds by the Lesley Appellees's attorney resulted in a mutual mistake regarding the mineral interest to be reserved; (3) that, as a result of the scrivener's errors, the deeds contained "an ambiguity that could be interpreted as reserving one-eighth of the oil, gas and other minerals"; (4) that the deeds should be, and were, reformed to reserve a one-fourth mineral interest; (5) that reformation of the deeds would not affect the reasonable expectations of subsequent purchasers of the property who took with notice of the ambiguities in the deeds and who did not bargain to receive more than a one-fourth mineral interest; (6) that reformation of the deeds resulted in such subsequent purchasers receiving the mineral interest that they bargained to receive when they purchased their lots; and (7) that each lot owner defendant was conveyed a one-fourth mineral interest, without executive rights, in their respective lots.

*Issues on Appeal*

The Landowner Appellants present six issues for review. In their first five issues, they contend that the trial court erred in granting summary judgment to appellees and in denying summary judgment to them for the following reasons: (1) that the owner of the executive rights does not have an affirmative duty to lease the minerals; (2) that appellees failed to present evidence showing that they breached the alleged duty to lease; (3) that appellees do not have a right to self-develop the

9

minerals; (4) that Bluegreen did not retain the executive rights and that the trial court's conclusion that Bluegreen retained the executive rights was irreconcilable and void because it was based on a finding that the restrictive covenants were both valid and invalid; and (5) that a deed may not be reformed under the doctrine of mutual mistake when subsequent purchasers have acquired the property without knowledge of the mutual mistake. In their sixth issue, the Landowner Appellants contend that, if this court determines that a duty to lease exists or that appellees have a right to self-develop the minerals, we should extend the accommodation doctrine to protect against condemnation of the surface estate.

Bluegreen presents six issues for review. In its first issue, Bluegreen contends that the trial court erred in rendering summary judgment declaring that the owner of the executive rights owes a fiduciary duty to lease. In its second issue, Bluegreen contends that the trial court erred in rendering summary judgment to appellees that Bluegreen breached a duty to lease appellees' minerals. In its third and fourth issues, Bluegreen contends that the trial court erred in rendering summary judgment to the Lesley Appellees (1) on their claim that Bluegreen breached the contractual notice requirements in their deeds to Bluff Dale and (2) on their reformation claims. In its fifth issue, Bluegreen contends that the trial court erred in failing to render summary judgment to it with respect to the issues raised in Issues Nos. 1 through 4 above. In its sixth issue, Bluegreen contends that, if it owns the executive rights, the trial court erred in denying its motion for summary judgment on appellees' tortious interference claims.

The VLB presents one issue for review. In its issue, the VLB contends that the trial court erred in denying its plea to the jurisdiction based on sovereign immunity.

*Summary Judgment Standards of Review*

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The parties filed traditional and no-evidence motions for summary judgment. A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). In order for a defendant to be entitled to summary judgment, it must either disprove an element of each cause

10

of action or establish an affirmative defense as a matter of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once the movant establishes a right to summary judgment, the nonmovant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). When reviewing a traditional summary judgment, the appellate court considers all the evidence and takes as true evidence favorable to the nonmovant. *Am. Tobacco Co.*, 951 S.W.2d at 425; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The appellate court "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented" and may not ignore "undisputed evidence in the record that cannot be disregarded." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755, 757 (Tex. 2007).

When a no-evidence motion for summary judgment is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A trial court must grant a proper no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged elements of the claim. TEX. R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). We review a no-evidence summary judgment under the same standard as a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). We review the evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

Competing motions for summary judgment were filed on some of the issues. When competing motions are filed and one is granted and the other is denied, the reviewing court must review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). The reviewing court should render such judgment as the trial court should have rendered. *Id.*

*Ownership of the Executive Rights*

As part of Bluegreen's second issue, it asserts that the trial court erred in concluding that it was the sole owner of the executive rights. As part of the Landowner Appellants' fourth issue, they

11

assert that the trial court erred in concluding that Bluegreen reserved the executive rights in its deeds to the lot owners. A mineral estate consists of five attributes: (1) the right to develop (the right of ingress and egress); (2) the right to lease (the executive right); (3) the right to receive bonus payments; (4) the right to receive delay rentals; and (5) the right to receive royalty payments. *French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795, 797 (Tex. 1995); *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986); *Reagan v. Marathon Oil Co.*, 50 S.W.3d 70, 82 (Tex. App.—Waco 2001, no pet.); *Bank One, Tex., Nat'l Ass'n v. Alexander*, 910 S.W.2d 530, 532 (Tex. App.—Austin 1995, writ denied). Each attribute is an independent property right, may be severed into a separate interest, and may be separately conveyed or reserved by the owner. *French v. Chevron U.S.A., Inc.*, 871 S.W.2d 276, 277-78 (Tex. App.—El Paso 1994), *aff'd*, 896 S.W.2d 795 (Tex. 1995); *Extraction Res., Inc. v. Freeman*, 555 S.W.2d 156, 158-59 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.). When an owner conveys a mineral estate, all attributes are impliedly transferred as well unless they are specifically reserved to the grantor. *French*, 871 S.W.2d at 278; *Prairie Producing Co. v. Schlachter*, 786 S.W.2d 409, 412 (Tex. App.—Texarkana 1990, writ denied). Thus, when a mineral interest is conveyed, the executive right incident to that interest passes to the grantee unless specifically reserved. *Day & Co. v. Texland Petroleum, Inc.*, 786 S.W.2d 667, 669 n.1 (Tex. 1990); *Schlittler v. Smith*, 101 S.W.2d 543, 544 (Tex. 1937).

In this case, the Hedricks conveyed the executive rights to H.S. Foster in the 1952 deed. That deed specifically provided that "[H.S. Foster] shall have full, complete and sole right to execute oil, gas and mineral leases covering all the oil, gas and other minerals in the following described land." In 1966, Betty Yvon Lesley and her husband, Kenneth Lesley, acquired from H.S. Foster the surface estate and one-half of the mineral estate in 174.35 acres of the subject property. When H.S. Foster died, Betty Yvon Lesley and Bobby John Foster inherited the surface estate and one-half mineral interest in 3,923.58 acres of the subject property. In the 1998 deeds from (1) Betty Yvon Lesley and Bobby John Foster to Bluff Dale and (2) Betty Yvon Lesley and Kenneth Lesley to Bluff Dale, the Lesleys and Foster conveyed the executive rights to Bluff Dale. Specifically, the deeds provided that "[Bluff Dale] shall have full rights to execute all future oil, gas, sulphur, and other mineral leases." The parties do not dispute that the Lesleys and Foster conveyed the executive rights to Bluff Dale, that Bluff Dale conveyed the executive rights to Properties of the Southwest, that Properties of the

12

Southwest later changed its name to Bluegreen, and that, therefore, Bluegreen became the owner of the executive rights.

Bluegreen's deeds to the lot owners typically provided that there were no reservations from conveyance. The deeds also typically provided that "all restrictions, covenants, and easements" were exceptions to the conveyance and warranty. One such restriction was the prohibition against mineral development set forth in Section 3.12 of the declarations of covenants, uses, and restrictions. Section 3.12 provided that "[n]o commercial oil drilling, oil development operations, oil refining, quarrying or mining operation of any kind shall be permitted." Appellees state in one of their appellate briefs that, "[w]hile none of the Bluegreen deeds make any specific mention of the right of ingress and egress for development of the minerals or the right to execute a lease, by stripping the grantee of any right to drill, quarry, or mine, by definition, the grantee is without the ability to convey those rights to a subsequent lessee." Appellees assert that, because Section 3.12 prohibited the lot owners from leasing the minerals, the deeds expressed an intent on the part of Bluegreen to reserve the executive rights. Therefore, appellees contend that Bluegreen retained the executive rights. The trial court declared that Bluegreen had not effectively conveyed the executive rights to the lot owners, to the POA, or to any other party.

As acknowledged by appellees, Bluegreen's deeds to the lot owners did not specifically mention the right to execute a lease. Bluegreen did not specifically reserve the executive rights in its deeds to the lot owners. In essence, appellees assert that Bluegreen impliedly reserved the executive rights by including the restriction against mineral development in the deeds. However, a grantor may not reserve the executive rights by implication. Because Bluegreen did not specifically reserve the executive rights in its deeds to the lot owners, the executive rights passed to the lot owners. *Day & Co.*, 786 S.W.2d at 669 n.1.[3]

The trial court erred in granting summary judgment declaring that Bluegreen did not effectively convey the executive rights to the lot owners or any of its other grantees.[4] We sustain the

---

[3]By accepting the restrictive covenants, the lot owners agreed not to allow mineral development on their tracts unless two-thirds of the owners agreed to change the restriction.

[4]The record does not demonstrate whether Bluegreen currently owns any lots in the Mountain Lakes Development. Bluegreen may own the executive rights with respect to lots, if any, that it owns. Appellees alleged that "[b]y deed dated January 16, 2006 . . . Bluegreen purported to specifically convey all executive leasing rights it owned in Mountain Lakes to the Property Owners Association."

13

Landowner Appellants' fourth issue and Bluegreen's second issue to the extent the Landowner Appellants and Bluegreen complain that the trial court erred in concluding that Bluegreen reserved the executive rights.[5] We reverse Section IV of the trial court's order. Because neither the Landowner Appellants nor Bluegreen moved for summary judgment that Bluegreen conveyed the executive rights to the lot owners, we do not render judgment declaring that Bluegreen conveyed the executive rights to the lot owners. Instead, we remand the ownership of the executive rights issue to the trial court for further proceedings consistent with this opinion.

*Duty of Executive Rights Owner to Non-Executive Mineral Owners*

In its declarations, the trial court defined the duty owed by the executive to the non-executive mineral owners as follows:

> [T]he Owner of the Leasing Rights owes to the non-executive mineral owners the same degree of diligence and discretion in exercising the rights and powers granted under Leasing Rights as would be expected of the average landowner who because of self-interest is normally willing to take affirmative steps to seek or to cooperate with prospective lessees (hereinafter the "Duty to Lease").[6]

The trial court's declaration is identical in material respects to a jury instruction that was given in *Manges v. Guerra*, 673 S.W.2d 180, 183 (Tex. 1984). In *Manges*, neither party objected to the instruction, and the Texas Supreme Court did not approve the instruction as properly defining the duty owed by the owner of the executive right. 673 S.W.2d at 183.

In *Manges*, the executive engaged in acts of self-dealing, including leasing the minerals to himself on terms that were unfair to the non-executive mineral owners. *Id.* at 184. The executive also

---

[5]Appellees contend that the Landowner Appellants did not preserve for appeal the issue of ownership of the executive rights and that the trial court's judgment must be affirmed as to lot owners who do not appeal. The Landowner Appellants preserved the issue for review by raising it in their response to appellees' motion for summary judgment on the ownership of the executive rights. The respective rights of Bluegreen, the POA, the Landowner Appellants, and the lot owners who did not appeal as to the ownership of the executive rights are interwoven. The executive rights issue is the same for all of these parties: Bluegreen either conveyed the executive rights or did not convey them. Therefore, we reverse the trial court's declaration that Bluegreen owned the executive rights as to all parties. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex. 1982) (A reversal as to an appealing party justifies a reversal as to nonappealing parties "where the respective rights of the appealing and nonappealing parties are so interwoven or dependent on each other as to require a reversal of the entire judgment."); *Belz v. Belz*, 667 S.W.2d 240, 244 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) ("The applicable standard is that reversal is required when the rights of appealing and nonappealing parties are so interwoven or dependent on each other as to require reversal of the whole judgment when a part thereof is reversed.").

[6]The issue of the duty owed by the owner of the executive rights to non-executive mineral owners does not appear to be a proper subject matter of relief under the Uniform Declaratory Judgments Act. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 2008).

14

executed a deed of trust covering "all of the oil, gas and other mineral interests . . . including . . . executive rights and powers." *Id.* at 182. The *Manges* court recognized that an executive owes the non-executive mineral owners the duty of utmost good faith and that the duty is fiduciary in nature. *Id.* at 183. The fiduciary duty arises from the relationship of the parties and not from the terms of a contract. *Id.* The court explained that "[the] duty requires the holder of the executive right . . . to acquire for the non-executive every benefit that he exacts for himself." *Id.* The court held that the executive had breached his fiduciary duty in making the lease to himself, in agreeing to accept a nominal bonus as a term of the lease, and "in dealing with the entire mineral interest so that he received benefits that the non-executives did not receive." *Id.* at 184.

In *In re Bass*, 113 S.W.3d 735 (Tex. 2003) (orig. proceeding), the supreme court explained its holding in, and distinguished, *Manges*:

> *Manges* involved a dispute between mineral estate co-tenants. Manges purchased one-half of the mineral estate and executive leasing rights from the Guerra family with the Guerras retaining the other 50% ownership interest in the mineral estate. The Guerras sued Manges for self-dealing in leasing a portion of the estate to himself at unfair terms. We stated that "[a] fiduciary duty arises from the relationship of the parties . . . [t]hat duty requires the holder of the executive right, Manges in this case, to acquire for the non-executive every benefit that he exacts for himself." Accordingly, we held that Manges breached his fiduciary duty to the Guerras by making a lease to himself under numerous unfair terms.
>
> . . . .
>
> What differentiates this case from *Manges*, however, is that no evidence of self-dealing exists here. Bass has not leased his land to himself or anyone else. Bass has yet to exercise his rights as the executive. Because Bass has not acquired any benefits for himself, through executing a lease, no duty has been breached. Thus, the present facts are distinguishable from *Manges*.

113 S.W.3d at 744-45 (citation omitted).

The court's analysis in *Bass* establishes that no breach of fiduciary duty can occur until the executive exercises the executive rights. Under *Manges* and *Bass*, a breach of fiduciary duty occurs if (1) the executive exercises the executive rights, (2) the executive acquires benefits from the minerals for himself by exercising the executive rights, and (3) the executive fails to acquire every benefit for the non-executive mineral owners that he acquired for himself. *Bass*, 113 S.W.3d at 744-45. The

owner of the executive rights does not have an affirmative duty to lease the minerals.[7] *See Hlavinka v. Hancock*, 116 S.W.3d 412, 420 (Tex. App.—Corpus Christi 2003, pet. denied) ("[A]ppellees misconstrue *Manges* in seeking to impose a fiduciary duty to lease upon the executive interest owner."). The trial court erred in defining the duty owed by the executive to the non-executive mineral owners. We sustain Bluegreen's first issue.

The trial court also declared that Bluegreen, as the executive rights owner, breached the "Duty to Lease" in four respects: (1) by entering into a deed of trust burdening the executive rights; (2) by creating and recording the declarations of covenants and the plats for the subdivision; (3) by failing to provide notice of the filing of the declarations of covenants as is required under the Lesley Appellees' deeds to Bluff Dale; and (4) by failing to lease appellees' minerals when there was opportunity to do so. In *Manges*, the executive's deed of trust covered all mineral interests, including the executive right. *Manges*, 673 S.W.2d at 182. Appellees contend that Bluegreen executed two similar deeds of trust.[8] However, the deeds of trust that Bluegreen executed did not purport to cover any mineral interests. Even if Bluegreen's deeds of trust had covered the executive rights, we would find, under the reasoning in *Bass*, that Bluegreen did not exercise the executive rights to obtain benefits from the minerals by executing the deeds of trust. In contrast, this court in *Comanche Land & Cattle Co. v. Adams*, 688 S.W.2d 914, 915-16 (Tex. App.—Eastland 1985, no writ), cited by appellees, found that the holder of the executive rights had obtained a benefit from the minerals that the non-executive royalty owners had not. Bluegreen did not exercise the executive rights by creating and recording the declarations of covenants and the plats for the subdivision. Rather, the declarations, which included the restriction against mineral development, showed that Bluegreen would not be exercising the executive rights. Similarly, Bluegreen did not exercise the executive rights by failing to provide notice of the filing of the declarations of covenants to the Lesley Appellees. We have held that the owner of the executive rights does not have a duty to lease the minerals. Therefore, Bluegreen did not breach a duty by failing to lease appellees' minerals.

---

[7]In addition to addressing the fiduciary duty issue, the *Bass* court considered whether an implied covenant to develop the mineral estate existed. *Bass*, 113 S.W.3d at 743. The court refused to imply a covenant to develop. *Id.* at 744.

[8]Properties of the Southwest executed the deeds of trust before changing its name to Bluegreen. Because Properties of the Southwest and Bluegreen were the same entity, we treat Bluegreen as having executed the deeds of trust.

The Landowner Appellants moved for a no-evidence summary judgment on the ground that they did not breach the alleged fiduciary duty to lease appellees' minerals. There is no evidence in the record that the Landowner Appellants exercised the executive rights.[9] Because the record lacks such evidence, the trial court erred in denying summary judgment to the Landowner Appellants on appellees' breach of fiduciary duty claims.

We note that the facts in this case are nothing like the facts in *Manges*. This case involves an arms-length transaction between the Lesley Appellees and Bluff Dale. Bluff Dale wanted to obtain property for the purpose of developing a residential subdivision or selling it to another residential developer. Bluff Dale bought about 4,100 acres of land from the Lesley Appellees for that purpose; Bluff Dale did not buy the land for the purpose of mineral development. The Lesley Appellees certainly knew that a residential developer would not want drilling or other similar activities to take place on the surface area in the subdivision. With that knowledge, the Lesley Appellees sold the property to Bluff Dale for about $2,000,000. The Lesley Appellees could have negotiated to retain the executive rights. They could have refused to sell the property if Bluff Dale did not agree to let them retain the executive rights. Instead, the Lesley Appellees willingly conveyed the executive rights to Bluff Dale. Bluegreen, which later obtained the executive rights, developed the property as a residential subdivision. Bluegreen created the declarations of covenants, conditions, and restrictions for the purpose of maintaining the integrity of the subdivision. Based on the facts in this case, even if the declarations or the agreement to comply with them could be construed as an exercise of the executive rights, Bluegreen, the POA, and the lot owners did not breach a fiduciary duty to appellees.[10]

Because Bluegreen, as the executive rights owner, did not breach a fiduciary duty to appellees, the trial court erred in granting summary judgment to appellees on their breach of fiduciary claims against Bluegreen, and we reverse Section V of the trial court's order. For the same reason, the trial court erred in denying summary judgment to Bluegreen on appellees' breach of fiduciary duty claims. We sustain Bluegreen's second issue, and we also sustain its fifth issue to the

---

[9]Likewise, there is no evidence that any other lot owner or the POA exercised the executive rights.

[10]As stated earlier, we do not construe such declarations or complying with them as an exercise of the executive rights.

17

extent it asserts that the trial court erred in denying summary judgment to it on appellees' breach of fiduciary duty claims. The trial court also erred in denying summary judgment to the Landowner Appellants on appellees' breach of fiduciary duty claims. Therefore, we sustain the Landowner Appellants' second issue. We render judgment that appellees take nothing on their breach of fiduciary duty claims against Bluegreen and the Landowner Appellants.

*Right to Develop*

Appellees contend that, as non-executive mineral owners, they have a common-law right to self-develop their minerals. The trial court declared that the declarations of covenants were unenforceable and could not be used to prohibit "the [appellees'] rights as mineral co-tenants to self-exploration or self-development of [their] mineral interests in the Subject Land." As set forth above, the right to develop is one of the five attributes of the mineral estate. *French*, 896 S.W.2d at 797. "[T]he right to develop is a correlative right and passes with the executive rights." *Id.* at 797 n.1; *see also Day & Co.*, 786 S.W.2d at 669 n.1; *Reagan v. Marathon Oil Co.*, 50 S.W.3d 70, 82 n.11 (Tex. App.—Waco 2001, no pet.); *Alexander*, 910 S.W.2d at 532-33. When the Lesley Appellees conveyed the executive rights to Bluff Dale, the right to develop passed with the executive rights to Bluff Dale. Therefore, appellees did not retain a right to develop their minerals.[11] The trial court erred in declaring that appellees had the right to self-develop the land.[12] We sustain the Landowner Appellants' third issue. Because appellees do not have the right to self-develop their minerals, we must reverse Section VI of the trial court's order.[13]

*Lesley Appellees' Breach of Contract Claims Against Bluegreen*

The 1998 deeds from Bobby John Foster and Betty Yvon Lesley to Bluff Dale and Betty Yvon Lesley and Kenneth Lesley to Bluff Dale contained the following notice provision:

> Copies of any instruments dealing with the leasing of the mineral rights on the property above described shall either be furnished to Grantors direct or furnished to

---

[11]Appellees rely on *Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147 (Tex. App.—Eastland 2001, pet. denied), in arguing that, as mineral co-tenants, they have a right to develop their minerals. Appellees have correctly stated the common-law rule; however, the Lesley Appellees relinquished the right to self-develop the minerals when they conveyed the executive rights to Bluegreen.

[12]Had the Lesley Appellees retained the executive rights and the correlative right to develop, the restriction against mineral development would not prohibit them from exercising the rights. *Prop. Owners of Leisure Land, Inc. v. Woolf & Magee, Inc.*, 786 S.W.2d 757, 760 (Tex. App.—Tyler 1990, no writ) ("The mineral owner, having the dominant estate, cannot be limited by subdivision restrictions imposed by surface owners after the estate is severed.").

[13]Based on our rulings on the Landowner Appellants' first and third issues, we need not address their sixth issue (accommodation doctrine issue).

the depository bank designated by them for transmission to them, including, but not necessarily limited to, oil and gas leases, agreements for payment of bonuses, delay rentals, overriding royalties, production payments or other matters affecting the minerals or royalty interests.

The Lesley Appellees alleged that Bluegreen breached the notice provisions in the deeds by failing to provide them with notice of the filing of the declarations of covenants. The trial court granted summary judgment to the Lesley Appellees on their claim. The trial court declared that "Bluegreen breached the contractual requirement of the Lesley/Foster to Bluff Dale Deed and the Lesley to Bluff Dale Deed by failing to give the requisite notice of the filing of the Declarations of Covenants."

Bluegreen was not a party to the Lesley Appellees' deeds to Bluff Dale. Bluegreen asserts that it has no contractual liability to the Lesley Appellees because (1) privity of contract did not exist between it and the Lesley Appellees and (2) the notice provisions in the deeds were personal covenants that did not run with the land. In Texas, covenants that run with the land bind the heirs and assigns of the covenanting parties, while personal covenants do not. *Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 355 (Tex. App.—Eastland 2006, no pet.); *Tarrant Appraisal Dist. v. Colonial Country Club*, 767 S.W.2d 230, 235 (Tex. App.—Fort Worth 1989, writ denied). A covenant runs with the land if (1) it touches and concerns the land, (2) it relates to a thing in existence or specifically binds the parties or their assigns, (3) it is intended by the original parties to run with the land, and (4) the successor to the burden has notice. *Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987); *Montfort*, 198 S.W.3d at 355. Therefore, Bluegreen could be liable to the Lesley Appellees for breach of contract only if the notice provisions in the Lesley Appellees' deeds to Bluff Dale run with the land.

Covenants that run with the land generally burden or restrict the use of the land. *Montfort*, 198 S.W.3d at 354-56 (Grantor agreed to furnish fresh water from the land to the house and to the grantee for the purpose of watering the grantee's livestock.); *Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 666 (Tex. App.—Austin 2005, no pet.) (A restrictive covenant providing that property would be used only for commercial and light industrial purposes "burdened the property itself."); *Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P.*, 111 S.W.3d 187, 200 (Tex. App.—Texarkana 2003, pet. denied) (A restriction concerning fueling rights touched and concerned the land because it limited the use to which the land could be put.). Bluff Dale's

19

covenants in the deeds to provide copies of instruments dealing with leasing of mineral rights were mere notice requirements. The covenants did not burden or restrict Bluff Dale's exercise of the executive rights in any fashion. As such, the contractual notice requirements did not run with the land and did not bind Bluegreen.[14]

The trial court erred in granting summary judgment to the Lesley Appellees on their breach of contract claims against Bluegreen and in denying summary judgment to Bluegreen on those claims. We sustain Bluegreen's third issue and Bluegreen's fifth issue to the extent that Bluegreen asserts the trial court erred in denying its motion for summary judgment on the Lesley Appellees' breach of contract claims, and we render judgment that the Lesley Appellees take nothing on their breach of contract claims against Bluegreen.

### Appellees' Tortious Interference Claims Against Bluegreen

Appellees alleged various tortious interference claims against Bluegreen. Bluegreen moved for traditional and no-evidence summary judgments on those claims, and the trial court denied the motions. The trial court's summary judgment order in this cause did not dispose of the tortious interference claims, and those claims are not part of this severed cause. Instead, the tortious interference claims remained in the original cause. Because appellees' tortious interference claims are not part of this cause, we will not address Bluegreen's sixth issue or Bluegreen's contention that the trial court erred in denying its traditional and no-evidence motions for summary judgment on appellees' tortious interference claims.

### Lesley Appellees' Deed Reformation Claims

The Lesley Appellees' reformation claims involve the February 17, 1998 deed from Bobby John Foster and Betty Yvon Lesley to Bluff Dale and the September 30, 1998 deed from Betty Yvon Lesley and Kenneth Lesley to Bluff Dale. Before their conveyances to Bluff Dale, the Lesley Appellees owned the entire surface estate and a one-half mineral interest in the subject property. The Lesley Appellees' deeds to Bluff Dale contained identical mineral reservation clauses: "Grantors will be reserving unto themselves, their heirs and assigns, one-fourth (1/4) of the oil, gas, sulphur and other minerals to which Grantors are now entitled to in all of the lands covered by this conveyance."

---

[14]For the same reason, the contractual notice requirements did not bind Bluegreen's grantees.

The Lesley Appellees asserted that, under their deeds to Bluff Dale, they reserved a one-fourth mineral interest and conveyed a one-fourth mineral interest to Bluff Dale. In July 2006, Bluegreen and the POA filed counterclaims for declaratory judgment in which they alleged that the Lesley Appellees reserved a one-eighth mineral interest and conveyed a three-eighths mineral interest to Bluff Dale. In August 2006, the Lesley Appellees filed their second supplemental petition in which they sought reformation of the mineral reservation clauses in their deeds to Bluff Dale on the ground of mutual mistake.

To support a claim for reformation, the Lesley Appellees alleged that they intended to reserve a one-fourth mineral interest in their deeds to Bluff Dale but that, "by reason of a scrivener's error and/or a mutual mistake," their deeds to Bluff Dale "may not have accurately reflected the quantum of mineral interest that [they] intended to reserve." They further alleged that, if any question existed as to the amount of the mineral interest that they reserved in the deeds, the question had resulted from "a mutual mistake between the Lesley Plaintiffs and their grantee." The Lesley Appellees requested the trial court to reform the mineral reservations in the deeds to read as follows: "Grantors will be reserving unto themselves, their heirs and assigns, one-half of the oil, gas, sulphur and other minerals to which Grantors are now entitled to in all of the lands covered by this conveyance."

The Lesley Appellees filed a motion for summary judgment on their reformation claims and on the claims asserted by Bluegreen and the POA in their counterclaims for declaratory judgment. Bluegreen and various lot owners filed motions for summary judgment in which they sought a declaration that the Lesley Appellees reserved a one-eighth mineral interest in their deeds to Bluff Dale. The trial court granted the Lesley Appellees' motion and denied the other motions. The trial court declared that the mineral reservation clauses in the deeds were ambiguous and reformed the deeds on the ground of mutual mistake.

The underlying objective of reformation is to correct a mutual mistake made in *preparing* a written instrument so that the instrument truly reflects the *original* agreement of the parties. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987). Reformation requires proof of two elements: (1) an original agreement and (2) a mutual mistake, made *after* the original agreement, in reducing the original agreement to writing. *Id.* If a mistake has been made by a scrivener or typist, an instrument may be reformed and modified by a court to reflect the true

21

agreement of the parties if the mistake was a mutual mistake. *Henderson v. Henderson*, 694 S.W.2d 31, 34 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.); *Louviere v. Power*, 389 S.W.2d 333, 335 (Tex. Civ. App.—Waco 1965, writ ref'd n.r.e.). Bluegreen argues that the trial court erred in reforming the deeds because they were unambiguous. However, the fact that a written instrument is couched in unambiguous language, that the parties knew what words were used and were aware of their ordinary meaning, or that they were negligent in failing to discover the mistake before signing the instrument will not preclude relief by reformation. *Marcuz v. Marcuz*, 857 S.W.2d 623, 627 (Tex. App.—Houston [1st Dist.] 1993, no writ); *Brinker v. Wobaco Trust Ltd.*, 610 S.W.2d 160, 164 (Tex. Civ. App.—Texarkana 1980, writ ref'd n.r.e.).

The Lesley Appellees executed the deeds to Bluff Dale in 1998. They filed their reformation claim in this cause on August 10, 2006. The four-year statute of limitations governs a suit for reformation of a deed. *Brown v. Havard*, 593 S.W.2d 939, 943 (Tex. 1980); *Cullins v. Foster*, 171 S.W.3d 521, 531 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). The Lesley Appellees acknowledged in their motion for summary judgment that their suit for reformation was timely filed only if the statute of limitations was tolled for an appropriate period of time. Bluegreen and the POA asserted in their responses to the Lesley Appellees' motion that the statute of limitations barred the Lesley Appellees' reformation claims.

Texas courts apply the discovery rule to reformation claims based on mutual mistake. Under the discovery rule, the statute of limitations does not begin to run until the party seeking reformation knew or, in the exercise of reasonable diligence, should have known of the mistake in the deed. *Brown*, 593 S.W.2d at 944; *Cullins*, 171 S.W.3d at 531; *Broyles v. Lawrence*, 632 S.W.2d 184, 187-88 (Tex. App.—Austin 1982, no writ).

The Lesley Appellees presented an affidavit of Betty Yvon Lesley in support of their motion for summary judgment. In the affidavit, Betty Yvon Lesley stated that, after closing the transactions with Bluegreen in 1998, she and her husband, Kenneth Lesley, believed that they had reserved a one-fourth mineral interest in the deeds. She also stated that she and Kenneth were informed by their attorneys in June 2006 "that an adverse claim to 1/8th of our minerals would be forthcoming." The Lesley Appellees assert that they did not have notice of the mutual mistake in the deeds until they

learned about the adverse claim in June 2006 and that, therefore, the discovery rule tolled the statute of limitations until that time.

In *Brown*, the Texas Supreme Court considered the ambiguous nature of the language used in a mineral reservation clause in a deed in determining whether the party seeking reformation in the exercise of reasonable diligence should have known of the mistake in the deed. *Brown*, 593 S.W.2d at 944. The court explained that the mistake was not "so plainly evident as to charge [the grantee] with the legal effect of the words used." *Id.* Therefore, the court concluded that the grantee could not be charged as a matter of law with knowledge of the mistake. *Id.*

In this case, the trial court found that the Lesley Appellees' deeds to Bluff Dale contained ambiguous mineral reservation clauses that could be interpreted as reserving one-eighth mineral interests. Whether a deed is ambiguous is a question of law for the court, which we review de novo. *Johnson v. Conner*, 260 S.W.3d 575, 579 (Tex. App.—Tyler 2008, no pet.); *Gore Oil Co. v. Roosth*, 158 S.W.3d 596, 599 (Tex. App.—Eastland 2005, no pet.). A court's primary goal when construing a deed is to ascertain the true intention of the parties as expressed in the "four corners" of the instrument. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). If a written instrument, such as a deed, is worded in such a way that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980); *Gore Oil Co.*, 158 S.W.3d at 599. However, if a written instrument remains reasonably susceptible to more than one meaning after the rules of interpretation have been applied, then the instrument is ambiguous. *R & P Enters.*, 596 S.W.2d at 519; *Gore Oil Co.*, 158 S.W.3d at 599.

Before the Lesley Appellees executed the deeds to Bluff Dale, they owned a one-half mineral interest in the subject property. Thus, they were "entitled to" one-half of the minerals. In their deeds to Bluff Dale, they "reserv[ed] unto themselves, their heirs, and assigns, one-fourth (1/4) of the oil, gas, sulphur and other minerals to which Grantors are now entitled to in all of the lands covered by this conveyance." Under the clear language in the deeds, the Lesley Appellees reserved one-fourth of their one-half mineral interest. Therefore, the Lesley Appellees reserved a one-eighth mineral interest. Because the deeds can be given a definite legal meaning and are not reasonably susceptible to more than one meaning, they are unambiguous. *R & P Enters.*, 596 S.W.2d at 519.

23

The Lesley Appellees knew that they owned a one-half mineral interest before their conveyances to Bluff Dale. By reading the clear language in their deeds to Bluff Dale, they would have known that they were reserving one-fourth of their one-half mineral interest. Based on the reasoning in *Brown*, the mistakes, if any, in the Bluff Dale deeds were "so plainly evident as to charge [the Lesley Appellees] with the legal effect of the words used." *See Brown*, 593 S.W.2d at 944. As a matter of law, the Lesley Appellees in the exercise of reasonable diligence should have known of the mistakes in the deeds when they executed the deeds. Their reformation claims are barred by the four-year statute of limitations.

The trial court erred in granting summary judgment to the Lesley Appellees on their reformation claims. We sustain Bluegreen's fourth issue. Based on our ruling that limitations barred the Lesley Appellees' reformation claims, we need not address (1) whether the Lesley Appellees met their summary judgment burden of establishing the elements of their reformation claims or (2) the matters raised by the Landowner Appellants in their fifth issue. We reverse the trial court's judgment on the Lesley Appellees' reformation claims, including Section II of the trial court's order. Because Bluegreen and the Landowner Appellants did not affirmatively move for summary judgment on the statute of limitations issue, we do not render judgment in their favor on the Lesley Appellees' reformation claims. Instead, we remand the Lesley Appellees' reformation claims to the trial court for further proceedings consistent with this opinion.

*VLB's Sovereign Immunity*

Appellees named the VLB as a lot owner defendant in their pleadings. The VLB filed a plea to the jurisdiction based on sovereign immunity. The trial court denied the VLB's plea to the jurisdiction. In its sole appellate issue, the VLB contends that the trial court erred in denying its plea to the jurisdiction.

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638-39 (Tex. 1999). Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction. *Id.* Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Accordingly, we review a trial court's order denying a jurisdictional plea based on sovereign immunity de novo. *Id.*

24

The VLB is a state agency. Sovereign immunity, unless waived, protects the State and various divisions of state government, such as agencies, from lawsuits for damages. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003); *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). Immunity from suit bars a suit against the State unless the legislature expressly consents to the suit by statute or resolution granting express legislative permission. *Little-Tex*, 39 S.W.3d at 594. Legislative consent to sue the State must be expressed in "clear and unambiguous language." *IT-Davy*, 74 S.W.3d at 854.

Certain types of declaratory judgment actions do not implicate the State's sovereign immunity. *IT-Davy*, 74 S.W.3d at 855. In such actions, a party need not obtain consent to sue the State. For example, "[p]rivate parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority." *Id.* Such suits do not constitute "suits against the State" because suits to compel state officers to act within their official capacity do not attempt to subject the State to liability. *Id.* In this case, appellees did not seek declaratory relief against any official of the VLB. Appellees only sued the VLB. In addition, a party may bring a declaratory judgment action against the State seeking a declaration as to the party's rights and status under a statute or an ordinance. *IT-Davy*, 74 S.W.3d at 859-60; *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994). In this case, appellees did not seek a declaration as to their rights and status under any statute or ordinance.

A private party cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory judgment claim. *City of Houston v. Williams*, 216 S.W.3d 827, 828-29 (Tex. 2007); *IT-Davy*, 74 S.W.3d at 856. Therefore, a suit for monetary damages against a sovereign is not transformed into a viable suit by a request for a declaratory judgment. *Williams*, 216 S.W.3d at 829.

In their appellate brief, appellees assert that, in their declaratory judgment action, they "asked for construction of the parties' respective rights under a deed in their chain of title." The Texas Declaratory Judgments Act authorizes a person interested under a deed to have determined any question of construction arising under the deed and to obtain a declaration of rights, status, or other legal relations thereunder. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (Vernon 2008); *City of Anson v. Harper*, 216 S.W.3d 384, 394 (Tex. App.—Eastland 2006, no pet.). In their brief,

25

appellees focus on two aspects of their claims for declaratory relief: (1) their request for a declaration as to the holder of the executive rights and (2) their request that the covenants prohibiting mineral development were unenforceable. Appellees assert that these requests did not implicate sovereign immunity and that they "have not sought liability or monetary damages from the VLB."

A review of appellees' pleadings shows that they sought to recover money damages from the VLB, whether or not the VLB owned the executive rights. Appellees initially alleged that the VLB and the other lot owners owned the executive rights in the minerals underlying their lots. Later, appellees amended their pleadings and alleged that Bluegreen had retained the executive rights. In their live pleading, appellees alleged that "Defendants Bluegreen, the POA, or the Lot Owners . . . may be owners of executive rights to lease the minerals underlying the Development." Appellees further alleged that "[s]uch ownership rights shall be determined by the Court." Appellees alleged breach of contract and breach of fiduciary duty claims against "[t]he Defendants holding the executive rights as such holders shall be determined by the Court." They also alleged that "all Defendants, whether owners of the executive leasing rights or not, have aided and abetted the Defendants holding executive rights in breaching their duties by accepting deeds purporting to incorporate mineral development restrictions and by their own continued adherence to the Non-Development Covenants" and that, by engaging in such conduct, the defendants had breached contractual obligations to them. Appellees sought to recover damages from defendants for the alleged breaches of fiduciary duty and contract. Sovereign immunity bars appellees' claims for money damages against the VLB; therefore, the trial court erred in denying the VLB's plea to the jurisdiction with respect to these claims.

Appellees sought a declaratory judgment that Bluegreen owned the executive rights. In their brief, appellees acknowledge that their request for declaratory relief involved title to the executive rights. However, they assert that, because they did not seek to obtain title to the executive rights in a trespass to try title action, their request for declaratory judgment did not implicate sovereign immunity. In ruling on appellees' request, the trial court had to determine whether Bluegreen retained the executive rights or conveyed the executive rights to the lot owners.

A declaratory judgment action may be brought "when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c) (Vernon 2008). This case does not involve a boundary dispute. Instead, this case involves rival claims to the executive rights. A trespass to try title action,

and not a declaratory judgment action, is the proper method of adjudicating rival claims to the executive rights. *See Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004); *Ely v. Briley*, 959 S.W.2d 723, 727 (Tex. App.—Austin 1998, no pet.) (A trespass to try title action is the exclusive remedy by which to resolve competing claims to property.); *Bell v. State Dep't of Highways and Pub. Transp.*, 945 S.W.2d 292, 294 (Tex. App.—Houston [1st Dist.] 1997, writ denied), *abrogated by Harris County v. Sykes*, 136 S.W.3d 635 (Tex. 2004). In a trespass to try title action, the prevailing party's remedy is title to, and possession of, the real property interest at issue in the suit. *Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Although appellees did not assert a trespass to try title claim, their request for declaratory relief was similar to a trespass to try title claim. Appellees requested the trial court to determine competing claims to ownership of the property: appellees' claim that Bluegreen had retained the executive rights versus the lot owners' claim that Bluegreen had conveyed the executive rights to them. By making their claim for declaratory relief, appellees squarely placed the VLB's title to the executive rights in issue. Appellees sought a determination against the VLB on that issue. A trespass to try title action against the State requires legislative consent. *State v. Lain*, 349 S.W.2d 579, 582 (Tex. 1961) ("When in this state the sovereign is made a party defendant to a suit for land, without legislative consent, its plea to the jurisdiction of the court based on sovereign immunity should be sustained."); *Porretto*, 251 S.W.3d at 707-08; *State v. Beeson*, 232 S.W.3d 265, 271 n.5 (Tex. App.—Eastland 2007, pet. abated). We find that, by placing title to the executive rights in issue, appellees' request for declaratory relief implicated the VLB's sovereign immunity. Therefore, based on the reasoning in *Lain* and its progeny, sovereign immunity bars appellees' claim for declaratory relief on the ownership of the executive rights' issue.

Appellees assert that their request for a declaratory judgment that the covenants prohibiting mineral development were unenforceable did not implicate sovereign immunity. Appellees also requested declarations that the covenants could not be used (1) to prohibit mineral leases covering the subject property or (2) to prohibit appellees' rights of self-exploration and self-development of their mineral interests on the subject property. By requesting these declarations, appellees sought to affect the use of the VLB's surface estate. Appellees assert that, as owners of the dominant mineral estate, they have the right to "make reasonable use of the entirety of the surface of the Mountain Lakes Development" to extract their minerals.

While a mineral interest owner has no possessory interest in the surface estate, the surface is burdened in the mineral interest owner's or his lessee's favor with certain necessarily implied easements of ingress and egress and for the use of such portions of the surface for drilling, storing, pumping, and transporting as are incidental to the full enjoyment of the mineral interest owner's or his lessee's exclusive privilege to drill for, produce, and market the oil and gas. *Mobil Pipe Line Co. v. Smith*, 860 S.W.2d 157, 159 (Tex. App.—El Paso 1993, writ dism'd w.o.j.); *see also Sun Oil Co. v. Whitaker*, 483 S.W.2d 808, 810-11 (Tex. 1972). Appellees' requests for declaratory relief sought to burden the VLB's property with these implied easements. In *Beeson*, landowners filed a declaratory judgment action against the State in which they sought to establish an easement on the State's property. *Beeson*, 232 S.W.3d at 270-71. We held that the landowners' easement claims implicated sovereign immunity and that, therefore, sovereign immunity barred their suit. *Id.* at 271-72. Likewise, in this case, sovereign immunity bars appellees' claims for declaratory relief concerning the covenants against mineral development as they relate to the VLB's property.

The Lesley Appellees asserted their deed reformation claims against the VLB. The Lesley Appellees alleged that they intended to reserve a one-fourth mineral interest, and they sought to reform the deeds on the ground of mutual mistake. We have held that the Lesley Appellees unambiguously reserved a one-eighth mineral interest in their deeds to Bluff Dale. Thus, by their mutual mistake claim, the Lesley Appellees effectively sought to increase their one-eighth mineral interest to a one-fourth mineral interest and to decrease the VLB's three-eighths mineral interest to a one-fourth mineral interest. As such, the Lesley Appellees attempted to adjudicate the State's title to its mineral interest. Therefore, the Lesley Appellees' deed reformation claims against the State are barred by sovereign immunity. *Lain*, 349 S.W.2d at 582.

Appellees contend that the VLB waived sovereign immunity by seeking affirmative relief. In *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 373 (Tex. 2006), the City of Dallas sued a private party for negligence. In *Reata*, the supreme court held that, when a governmental entity asserts affirmative claims for monetary relief, the entity leaves "its sphere of immunity" and that, therefore, the adverse party may assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity. 197 S.W.3d at 376-77. In such a situation, the trial court acquires subject-matter jurisdiction over the adverse party's claims to the extent they offset the sovereign's claims. *Id.* at 377.

28

The VLB did not assert an affirmative claim for monetary damages in this case. In its original answer, the VLB prayed for recovery of "its attorney fees and costs of court; and for such other and further relief to which [it] may be justly entitled." In an amended answer, the VLB abandoned its request for attorneys' fees. Appellees assert that the VLB's request for attorneys' fees, costs, and such other and further relief for which it may be justly entitled constituted a waiver of sovereign immunity. The VLB sought to recover its attorneys' fees and costs in response to appellees' claims against it. The VLB's defensive claims for attorneys' fees and costs did not constitute affirmative claims for monetary relief under *Reata*. *Lamesa Indep. Sch. Dist. v. Booe*, 251 S.W.3d 831, 833 (Tex. App.—Eastland 2008, no pet.) ("[T]he court's opinion in *Reata* cannot be construed to encompass LISD's request for attorney's fees as an affirmative claim for relief."); *Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture*, 220 S.W.3d 25, 32 (Tex. App.—San Antonio 2006, pet. dism'd ) (Governmental entity's general pleadings for judgment and costs were not "the types of affirmative claims for monetary relief contemplated in *Reata*."). The VLB did not waive its immunity by its conduct in this case.

For the above reasons, sovereign immunity bars appellees' claims against the VLB. The trial court erred in denying the VLB's plea to the jurisdiction. We sustain the VLB's issue.

*This Court's Ruling*

We reverse the judgment of the trial court in its entirety. We render judgment that appellees take nothing on their breach of fiduciary duty claims against Bluegreen and the Landowner Appellants and on their breach of contract claims against Bluegreen.[15] We dismiss appellees' claims against the VLB for lack of jurisdiction. We remand the remainder of the claims to the trial court for further proceedings consistent with this opinion.

TERRY McCALL

JUSTICE

January 22, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Boyd, S.J.[16]

---

[15]In this opinion, we have sustained, in part, Bluegreen's fifth issue with respect to appellees' breach of fiduciary duty claims and breach of contract claims. For the reasons stated above, we overrule the remainder of Bluegreen's fifth issue.

[16]John T. Boyd, Retired Chief Justice, Court of Appeals, 7th District of Texas at Amarillo sitting by assignment.